*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID EUGENE VOELKERT,

Defendant-Appellant.

UNPUBLISHED
December 17, 2019

No. 344564
Muskegon Circuit Court
LC No. 16-004596-FH

Before: METER, P.J., and O'BRIEN and TUKEL, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of one count of third-degree criminal sexual conduct (CSC-III). MCL 750.520d. We affirm defendant's conviction, but remand with respect to the award of court costs.

## I. BACKGROUND

Defendant's convictions result from his sexual penetration of a 16-year old girl. The victim was a friend of defendant's niece and a guest in defendant's home on the night of the assault. Defendant's niece and daughter were also in the home on the night of the assault. Defendant admitted that he purchased the girls alcohol, hugged the victim, and rubbed the girls thighs up to where the "pocket ends" for 20 to 30 minutes. Defendant also admitted to taking pictures of the girls while they were intoxicated and to telling the victim that she was beautiful, but claimed that he did so because the victim stated that she was ugly. The victim testified that she fell asleep in a bedroom, but awoke when she felt defendant penetrate her vagina with his finger; she pushed defendant away, but a few hours later, defendant returned and "did it again." The victim testified that defendant tried to penetrate her with his penis, but believed that he was unsuccessful in doing so. A post-assault examination revealed that the victim had a tear on her fossa navicularis, which a nurse-examiner testified was "right in the middle of that skin underneath the vaginal opening."

Ultimately, the jury found defendant guilty of one count of CSC-III, MCL 750.520d, for which the trial court sentenced defendant to serve a prison term of 76 months to 15 years. This appeal followed.

-1-

## II. ANALYSIS

### A. OTHER-ACTS EVIDENCE

Defendant first argues that the trial court abused its discretion by admitting other-acts evidence under MCL 768.27a. The other-acts evidence involved defendant's admission that, in 2012, he took a 13-year-old girl to a hotel in Indiana and kissed and fondled her. Defendant testified at trial herein that he believed the girl was 21 years old and that he called the police on himself because what he did was "disgusting." "The decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). An abuse of discretion occurs "when the court chooses an outcome that falls outside the range of principled outcomes." *People v Douglas*, 496 Mich 557, 565; 852 NW2d 587 (2014) (internal quotation marks and citation omitted).

MCL 768.27a provides, in pertinent part, "[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). Evidence introduced under MCL 768.27a may be considered for any relevant purpose, including its tendency to show "the likelihood of a defendant's criminal sexual behavior toward other minors." *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). Evidence admissible under MCL 768.27a remains subject to exclusion, however, under MRE 403. *People v Watkins*, 491 Mich 450, 481; 818 NW2d 296 (2012). "Exclusion is required under MRE 403 when the danger of unfair prejudice substantially outweighs the probative value of the evidence." *People v Brown*, 326 Mich App 185, 192; 926 NW2d 879 (2018) (internal citation and quotation marks omitted).

Defendant does not contest that the evidence was admissible under MCL 768.27a. Rather, defendant argues that the trial court should have precluded the evidence as unduly prejudicial under MRE 403. Defendant, however, has waived this argument. During the hearing on the prosecution's notice of intent to present "other acts" evidence, defendant's trial counsel expressly conceded that he was "not sitting here arguing the admissibility . . . ." Instead, counsel argued that he wanted access to more information about the evidence. Accordingly, by conceding the admissibility of the evidence, defendant has waived any purported error. See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000).

Nonetheless, we will address the issue to the extent that it bears on defendant's claims of ineffective assistance, *infra*. When making its determination under MRE 403, the trial court may consider the following nonexhaustive list of factors:

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

-2-

"[W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Id*. at 487.

Taking the factors out of order, factor six addresses, *inter alia*, the degree of contention between the complainant's and the defendant's testimony in the instant case. See, e.g., *People v Solloway*, 316 Mich App 174, 196; 891 NW2d 255 (2016) (weighing the need for additional evidence with respect to the allegations at issue, not the other-acts evidence). Here, defendant and the victim provided drastically different accounts of the events at issue, meaning that additional evidence would have been helpful to the jury's deliberations. Regarding factor five, we note that defendant admitted to the prior impropriety, leaving no question about the evidence's reliability.

The remaining factors are close calls. Regarding the timing and frequency of the events—factors two and three—the two instances of impropriety occurred within an approximately three-to-seven year timespan. Neither the timespan nor the number of instances are strong evidence of a pattern of predation; however, the events are not so isolated that they are incapable of showing a tendency toward predation. Defendant argues that his turning himself in to the police after the incident and seeking mental-health treatment are intervening events— factor four—that should weigh against admissibility. Generally, we agree with defendant that these steps indicate that defendant acknowledged his past impropriety and sought change— considerations that would weigh against admissibility. Yet, even defendant's uncontested conduct in this case, particularly the fact that defendant purchased alcohol for underage girls and admitted to giving the girls leg messages high up their legs, suggests that defendant did not learn appropriate boundaries between adults and minors as a result of the prior incident.

Regarding the first factor, the similarity of the prior act and the alleged criminality, defendant is correct that there are several differences between the prior act and the instant offense. The prior act involves consensual kissing and fondling of the minor, while the immediate offense involved nonconsensual penetration of the victim. Yet, there are also similarities between the two offenses; most importantly the fact that both victims were teenage girls. Moreover, although there was no evidence that defendant criminally touched the victim before the assault, he surely inappropriately touched her near sensitive areas on her thighs. Indeed, the instant offense can be seen as an escalation of defendant's prior impropriety, moving from inappropriate touching or fondling to actual penetration. Although there are clear differences between the alleged and prior conduct, on balance, we conclude that this factor does not significantly weigh for or against admissibility.

Admittedly, this case presents a close question under MRE 403. Close evidentiary decisions, such as the one presented here, however, ordinarily cannot be an abuse of discretion. See *People v Sabin*, 463 Mich 43, 67; 614 NW2d 888 (2000). Again, we note that MRE 403 requires that the evidence be "substantially" outweighed by the danger of unfair prejudice to be precluded. At worst, the above analysis indicates that serious arguments could be made for or against admissibility under MRE 403. While, if viewing the evidence de novo, we might have made a different decision than the trial court, we are not left with a definite and firm conviction that the trial court erred by allowing the evidence. Accordingly, we conclude that the trial court did not abuse its evidentiary discretion.

B.  ASSISTANCE OF COUNSEL

Next, defendant argues in a brief filed pursuant to Administrative Order No. 2004-06, Standard 4, that several errors on the part of his trial counsel denied him the effective assistance of counsel.  Because defendant failed to request a *Ginther*[1] hearing or move for a new trial in the matter, this Court's "review of this issue is limited to mistakes apparent on the appellate record." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94.  "If the record does not contain sufficient detail to support defendant's ineffective assistance claim, then he has effectively waived the issue." *Id*.  A defendant requesting reversal of an otherwise valid conviction bears the burden of establishing "(1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counsel's unprofessional errors, the outcome of the proceedings would have been different." *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

*Witnesses*.  First, defendant argues that trial counsel was ineffective for failing to call numerous witnesses at trial.  Defendant, however, offers no explanation as to what, if any, benefit their testimony may have had at trial.  "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009) (internal citation and quotation marks omitted).  "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Miller*, 326 Mich App 719, 739; 929 NW2d 821 (2019) (internal citation and quotation marks omitted).

*Forensic Records*.  Defendant also faults trial counsel for failing to present a forensic evaluation indicating that the victim's underwear tested negative for blood and semen and a hospital record indicating that the victim denied bleeding to refute the idea that the alleged digital penetration caused her to bleed.  Regarding the presence of blood, defense counsel established during his cross-examination of an emergency-room nurse that the victim's underwear tested negative for blood and that she had indicated that she was not bleeding.  This Court will not second-guess trial counsel's decisions regarding the presentation of evidence. *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).  Because defendant's argument was already made to the jury, it would be entirely speculative for us to conclude that making the argument in a different fashion would have altered the outcome of the proceedings.

To the extent that defendant believes the documentation was nevertheless necessary to establish that the underwear "tested" negative for semen, defendant similarly has not shown that this evidence would have altered the outcome of the proceedings.  Indeed, the prosecution presented no evidence of the presence of any semen in the victim's underwear and, in any event, the victim's testimony that defendant tried to penetrate her with his penis but was unsuccessful implies that semen was not discharged during the second assault.  Finally, defendant was

---

[1] *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

convicted of only one count of CSC-III, of which defendant's digital penetration of the victim provides sufficient evidence to support the jury's verdict. Accordingly, we conclude that defendant has failed to meet his burden to show that counsel was ineffective for failing to offer these records.

*Posterior Fourchette Tearing.* Similarly, defendant claims that trial counsel should have presented information on "Posterior Fourchette Tearing" to demonstrate that the victim's vaginal tear could have been caused by something other than a sexual assault. Again, however, defense counsel established the point through cross-examination. The emergency-room nurse testified that there could be innocent explanations for the victim's tear, particularly that the victim could have caused the tear herself by "accidentally scratch[ing] herself while wiping using the restroom." Nothing in the record suggests that additional documentation of this concept would have been any more persuasive or would have altered the outcome of the proceedings. Defendant's argument to the contrary is without merit.

*Audio/Visual Evidence.* Next, defendant claims that defense counsel should have presented "audio/video evidence" that was purportedly lost before trial. Defendant has not explained, however, what was included in this allegedly lost evidence, nor does he explain why the evidence might have made a difference at trial. Accordingly, defendant has abandoned the claim. *Miller*, 326 Mich App at 739; *Payne*, 285 Mich App at 195.

Defendant also argues that trial counsel should have presented defendant's phone's SD card to undermine evidence presented by the prosecution that tended to show that defendant "wiped" his cellphone to hide incriminating evidence before turning it over to police. Defendant however, has not shown that his SD card contains any evidence predating the time in which defendant allegedly reset the phone. In any event, defendant's niece's phone contained incriminating evidence sent from defendant's phone, so it is unlikely that any evidence from the SD card would have benefited defendant's defense. Similarly, defendant argues that his counsel should have offered defendant's computer as evidence to prove that it did not include any porn, videos, or photographs that might have incriminated him. The prosecution never alleged, however, that defendant had any inappropriate items on his computer. Accordingly, defendant cannot show that evidence from his computer would have been relevant or that it would have assisted his defense. These claims are, therefore, without merit.

*Police Report.* Defendant faults trial counsel for failing to present a police report as evidence at trial because it purportedly would have undermined the victim's credibility. Police reports, however, "generally are inadmissible hearsay," *In re Forfeiture of a Quantity of Marijuana*, 291 Mich App 243, 254; 805 NW2d 217 (2011), and defendant has not otherwise shown that the police report at issue would have been admissible in this case. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). This claim is also without merit.

*Attorney-Client Relationship.* Defendant argues that defense counsel was ineffective for failing to inform the trial court before trial that he or someone from his office had previously represented defendant's second ex-wife, which defendant maintains would have been an impermissible conflict of interest. Defendant, however, raised this concern with the trial court

after trial, and the trial court determined that there was not a conflict of interest, pointing to the fact that the public defender's office "about roughly four years ago . . . represented [defendant's ex-wife] in a PPO petition" and that she had absolutely nothing to do with this case. Nothing in the record supports the notion that a conflict of interest actually existed and defendant has not otherwise explained how the representation created any conflict.

Defendant also argues that trial counsel failed to keep confidential that defendant had "attempted to offer money to trial counsel . . . which broke the attorney-client relationship." Defendant is referring to a hearing that was held shortly before his sentencing in which his trial counsel advised the court that defendant "handed [him] a letter and asked if he could pay me some money and . . . have m[e] advocate more strongly for him." It is not entirely clear how this action prejudiced defendant or betrayed any confidences, and defendant makes no argument as to how this post-trial "betrayal" had any impact on the jury verdict or defendant's sentence. Thus, defendant has not demonstrated any entitlement to relief.

*Trial Preparation.* Defendant faults trial counsel for failing to prepare for trial with defendant by going "over key points that would have been able to bring about a different outcome." Defendant, however, has not explained what "key points" could have been better addressed. Defendant similarly fails to explain how those details would have impacted his defense. Accordingly, defendant has abandoned this claim. *Miller,* 326 Mich App at 739; *Payne,* 285 Mich App at 195.

Similarly, defendant claims that "trial counsel was ineffective by not questioning [witnesses regarding the Indiana allegations] as instructed to do so by the Trial Judge or doing research or discovery prior to trial, especially since these witnesses were key for the prosecution even though they had no relevance or similarities for this instant case." He explains, "[p]roper research by trial counsel as instructed by the Honorable Judge would have shown these witnesses should not have testified as they had nothing to do with the instant case." The trial court, however, never so instructed counsel. Rather, defense counsel requested the witnesses' contact information, stating: "I'd like to have the name and address of these individuals so that we can talk to them to find out what exactly Mr. Voelkert did or didn't tell them." The trial court agreed with defense counsel, stating, "I do think that you need to provide the name and address of these folks" "to the Defendant so they have an opportunity to interview them well in advance of trial."

Moreover, defendant has not explained how defense counsel could have been better prepared to address the witnesses' testimony. See *Miller,* 326 Mich App at 739; *Payne,* 285 Mich App at 195. In any event, defendant admitted to the impropriety in Indiana. In light of this admission, it is unclear what defense counsel could have done to better prepare for the witnesses' testimony. Accordingly, we are unable to conclude that any further preparation would have had any impact on the outcome of the proceedings. Defendant seems to suggest that additional preparation could have prevented testimony regarding the Indiana acts from being admitted at trial. As explained previously, although the decision whether to admit evidence of the Indiana impropriety was a close call, the trial court's decision to allow the evidence did not constitute an abuse of discretion. This claim is without merit.

*Indiana Documents.* Lastly, defendant argues that defense counsel failed to provide him with "Indiana documents on his divorce & Video from the Fruitport Police Department."

Defendant has not indicated how these documents would have impacted his defense. Again, defendant's failure to adequately address this issue constitutes abandonment of his final claim of ineffective assistance. *Miller*, 326 Mich App at 739; *Payne*, 285 Mich App at 195.

## C.  AWARD OF COURT COSTS

Finally, defendant argues that this Court should remand this matter to fix a clerical error, specifically the inclusion of $450 in court costs, in his judgment of sentence. During sentencing, the trial court imposed "a $68 state cost fee, $130 victim fee, [and] a $450 public defender fee." The judgment of sentence includes those amounts as well as $450 in court costs. Because the record does not reflect that the trial court ordered defendant to pay court costs, we must remand this case to the trial court to correct the clerical error. If the trial court did intend to award court costs, but misspoke on the record, the trial court may supplement the record and justify the imposition; if not, the error may be corrected administratively.

Affirmed but remanded for the limited purpose of determining the issue of court costs. We do not retain jurisdiction.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Jonathan Tukel