*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID JOSEPH MILLER,

Defendant-Appellant.

FOR PUBLICATION
January 15, 2019
9:05 a.m.

No. 338453
Macomb Circuit Court
LC No. 16-000668-FH

Before: BOONSTRA, P.J., and SAWYER and TUKEL, JJ.

BOONSTRA, P.J.

Defendant appeals by right his conviction, following a jury trial, of one count of identity theft, MCL 445.65(1)(a)(*i*). The trial court sentenced defendant to serve one day in jail and 18 months' probation. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case arises from defendant's use of his ex-wife's name and social security number to obtain electrical service from DTE Energy (DTE) at an address located on Elm Lane in Harrison Township between 2013 and 2015. At trial, a DTE employee testified that DTE account numbers are assigned to individuals rather than to properties, and that to obtain an account number, an individual must provide confidential information including his or her date of birth and social security number. That information is then verified through Trans Union (a company that provides credit checks) before establishing service. The DTE employee testified that a new account was opened in the name of defendant's ex-wife, Robin Mayer, for an address located on Elm Lane in Harrison Township in September 2013 (the Elm Lane account). Further, the account was associated with Mayer's social security number and could only have been opened by someone who was able to verify the confidential information over the phone.

Defendant admitted that the Elm Lane address was his address. He testified that he attempted to transfer his DTE service from his previous address to his new address in 2013, and that he provided his own social security number when he requested that the service be transferred. He denied knowing Mayer's social security number at the time he opened the account. However, he agreed that he had received and paid bills with Mayer's name on them.

Defendant testified that in 2002, several years after his divorce from Mayer, the name on his electric bills "randomly changed" to that of "Robin Miller," Mayer's name during their marriage, and that he was only able to change the account back into his own name after calling DTE over a period of eight months to a year. Defendant testified that he was never told why the name on his bill had changed. A DTE employee confirmed that there was another account with defendant listed as the responsible party and utilized his social security number, but that nonetheless also reflected the name of "Robin Miller." The DTE employee testified that a person whose name and social security number were associated with an account could change the name on the account, but not the personal information used to verify the account, such as a social security number.

Mayer denied providing DTE with the information to open the Elm Lane account. She testified, and a DTE employee confirmed, that she informed DTE in 2015 that she had never lived at the Elm Lane address or requested service at that address, and she requested that the service at that address be shut off. After the service was shut off, defendant called DTE and had his service reinstated under his own account that same day. DTE had no record of defendant having ever contacted it about the name and information on the Elm Lane account. Mayer testified that she had received two past-due bills for the Elm Lane account. Defendant eventually told her via text message that he had paid one of the bills, stating, "I have purchased a money order for $107. Will go in Tuesday's mail. I have never received a bill for any open payment, only bills ever received [sic] . . . ." Defendant testified that he never received a "final bill" for the account after the shutoff, because Mayer had asked for all correspondence related to the Elm Lane account to be forwarded to her.

After the close of proofs, the trial court discussed the proposed jury instructions with the prosecution and defendant's counsel. Defendant's counsel answered affirmatively when the trial court asked whether he was "satisfied" with the instructions. The trial court instructed the jury regarding the elements of identity theft, and stated that "[t]he prosecutor must also prove beyond a reasonable doubt that the crime occurred on or about September 3, 2013, through August 2015 in Macomb County." During deliberations, a note from the jury asked the trial court to define the word "obtain" in the context of the jury instructions on the elements of the offense. After meeting with counsel, the trial court instructed the jury: "There is no definition for obtain in the jury instructions. Please use your general knowledge and every day experience in the affairs of life to help you defined [sic] obtain." Defense counsel agreed on the record to the language of the trial court's response.

The jury convicted defendant as described. Defendant subsequently moved for a new trial, *Ginther*[1] hearing, or judgment of acquittal notwithstanding the verdict, arguing that his defense counsel was ineffective for failing to make several objections, that his conviction was based on insufficient evidence, and that MCL 445.65(1)(a)(*i*) was unconstitutionally vague. The trial court denied defendant's motions.

This appeal followed.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## II. JURY INSTRUCTIONS

Defendant argues that the trial court erred by instructing the jury in two respects: (1) by failing to properly instruct the jury regarding the date and time of the offense for which defendant was charged, and (2) by failing to properly instruct the jury on the correct definition of the word "obtain," as used in the jury instruction regarding the elements of identity theft. Defendant also argues that his counsel was ineffective for failing to object to these instructions. We disagree.

We review for plain error an unpreserved challenge to the trial court's jury instructions. See *People v Carines*, 460 Mich 750, 764-765; 597 NW2d 130 (1999). An error is plain if it is clear or obvious, and it affects substantial rights if it affected the outcome of the lower court proceedings. *Id*. This Court reviews de novo issues of statutory interpretation. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error a trial court's findings of fact, and reviews de novo questions of law. *Id*. When no *Ginther* hearing was held, this Court's review is limited to mistakes apparent from the record. *Payne*, 285 Mich App at 188.

A defendant may waive his or her challenge to jury instructions. See *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Waiver extinguishes any error, leaving nothing for this Court to review. *Id*. at 215. A defendant waives an issue by expressly approving of the trial court's action. *Id*. at 216. When the trial court asks the party whether it has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions. *People v Lueth*, 253 Mich App 670, 688; 660 NW2d 322 (2002).

In this case, defense counsel expressly affirmed that he had no objections to the trial court's jury instructions. Defendant has therefore waived this issue. Notwithstanding this waiver, we also find no plain error in the instructions.

### A. DATE AND TIME OF OFFENSE

Defendant argues that the trial court should have instructed the jury that it must find that defendant committed all of the elements of the offense of identity theft on the day that he opened the account, rather than within a range of dates encompassing the date on which the account was opened. We disagree.

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). A defendant is entitled to have the elements of the crime submitted to the jury in a way that is "neither erroneous nor misleading." *Id*. (quotation marks and citation omitted). However, "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. at 501-502.

This Court has stated that, where time is not an element of the offense, the prosecution need not prove the date and time of offenses beyond a reasonable doubt even though the felony

information must identify the date and time of the offenses. *People v Dobek*, 274 Mich App 58, 82-83; 732 NW2d 546 (2007). Here, MCL 445.65 provides in relevant part:

> (1) A person shall not do any of the following:

> (a) With intent to defraud or violate the law, use or attempt to use the personal identifying information of another person to do either of the following:

> (*i*) Obtain credit, goods, services, money, property, a vital record, a confidential telephone record, medical records or information, or employment.

The trial court instructed the jury as follows:

> The defendant is charged with a crime of using the personal information of another person to obtain services. To prove this charge, the prosecutor must prove each of the following elements beyond a reasonable doubt. First, that the defendant used the personal identifying information of Robin formerly known as Miller Mayer [sic]. Second, that the defendant did this with the intent to obtain services. Third, that the defendant did this with the intent to defraud, I mean act to cheat or deceive, usually to get money, property or something else valuable or to make someone suffer such a loss. The prosecutor must also prove beyond a reasonable doubt that the crime occurred on or about September 3, 2013, through August 2015 in Macomb County.

Although the trial court instructed the jury that it was required to make a finding that the offense occurred within a specific time period, the prosecution was not actually required to prove the timing of the offense as an element of the crime of identity theft. *Dobek*, 274 Mich App at 82-83. The trial court's instruction properly reflected that, to find defendant guilty of identity theft, it must find that he (1) used Mayer's personal identifying information, (2) to obtain services, (3) with the intent to defraud. On the whole, the trial court's instructions submitted the essential elements of the crime to the jury in a way that was neither confusing nor misleading. *Kowalski*, 489 Mich at 501.

## B. DEFINITION OF "OBTAIN"

Defendant argues that the instruction regarding the range of dates, combined with the trial court's refusal to instruct the jury on a specific definition of "obtain," led the jury to mistakenly conclude that it could find that defendant committed the offense of identity theft when defendant continued to received services from the Elm Lane account, even if it believed that he had not initially provided Mayer's personal information to DTE. We disagree, because the jury was permitted to conclude that defendant committed identity theft even if it did not conclude that he provided Mayer's personal information to DTE in September 2013.

This Court interprets statutes on the basis of their plain and ordinary language. *Williams*, 475 Mich at 250. We may consult a dictionary to determine the meaning of undefined statutory terms. *People v Lewis*, 302 Mich App 338, 342; 839 NW2d 37 (2013). When doing so, this Court should determine the most pertinent definition in light of the word's context in the statute. *People v Hershey*, 303 Mich App 330, 342; 844 NW2d 127 (2013).

MCL 445.65 does not state that it is illegal to *provide* personal information to another in order to obtain services. Rather, the statute provides that a person shall not "*use* or attempt to use the personal identifying information of another person . . . [to] *[o]btain* . . . services . . . ." MCL 445.65 (emphasis added). The word "obtain" is not defined in the identity theft statute. See MCL 445.65. Consulting a dictionary, the verb "obtain" has only one modern definition, which is "to gain or attain usu. by planned action or effort." *Merriam-Webster's Collegiate Dictionary* (11th ed). The question thus is whether defendant used Mayer's information to gain or attain services, not whether defendant was the person who gave Mayer's information to DTE upon the opening of the account. In other words, the word "obtain," in the context of the statute, can mean either to initially receive a service or to continue to attain the service by use of the information. Therefore, even accepting defendant's argument that he did not provide DTE with Mayer's information (that is, that defendant did not initially gain the service by using Mayer's information), defendant attained the service through his continued use of Mayer's information. A DTE employee testified that power at the Elm Lane address was provided through Mayer's account starting on September 30, 2013. Defendant was aware for months before August 2015 that he was receiving mail in Mayer's name. When Mayer advised DTE that she had no association with the Elm Lane address, service at that address was turned off. But defendant used Mayer's information to gain or attain electrical service at his Elm Lane residence until that shutoff occurred in August 2015.[2] Accordingly, even if the trial court's instruction that the offense dates were September 3, 2013 through August 2015 led the jury to question the meaning of the word "obtain," its definition encompassed both the initial receipt of service and the continued attainment of that service thereafter.

Moreover, the trial court did not err by failing to specifically instruct the jury on the meaning of "obtain." "Where confusion is expressed by a juror, it is incumbent upon the court to guide the jury by providing a 'lucid statement of the relevant legal criteria.' " *People v Martin*, 392 Mich 553, 558; 221 NW2d 336 (1974), overruled in part on other grounds *People v Woods*, 416 Mich 581 (1982), quoting *Bollenbach v United States*, 326 US 607, 612; 66 S Ct 402; 90 L Ed 350 (1946). The trial court's instructions must adequately provide the jury with a sufficient understanding of the elements of the crime. *Martin*, 392 Mich at 558. However, whether to provide additional instructions at the jury's request is within the court's discretion. *Id*.

When a word is not defined by statute, this Court presumes that the word is subject to ordinary comprehension, and there will be no error warranting reversal as a result of a trial court's failure to define a term that is generally familiar to lay persons and is susceptible to "ordinary comprehension." *People v Martin*, 271 Mich App 280, 352; 721 NW2d 815 (2006). For example, this Court has stated that the trial court's failure to define terms such as "keep,"

---

[2] Whether defendant could have had service at the address under his own account is irrelevant to the meaning of "obtain" because the service in fact was provided through an account using Mayer's information. Defendant reinitiated the service using his own information the same day that DTE discontinued power at the Elm Lane address at Mayer's request. The jury could certainly have considered this fact in relation to defendant's fraudulent intent, or lack thereof, but it has nothing to do with whether defendant used Mayer's information or whether defendant obtained a service by doing so.

"maintain," and "operate" was not reversible error because the terms were susceptible to ordinary comprehension. *Id.* at 352-353. As previously stated, the verb "obtain" has only one modern definition. *Merriam-Webster's Collegiate Dictionary* (11th ed). And the verb "obtain" is not significantly less common than other words this Court has concluded are susceptible to ordinary comprehension.[3]

For the same reasons, we also conclude that had defense counsel objected to the instructions on the grounds asserted by defendant, those objections would have been futile. Counsel is not ineffective for failing to make futile objections. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### III. AMENDMENT OF THE INFORMATION

Defendant also argues that the trial court erred by allowing the prosecution to amend the information to reflect the time period from September 2013 to August 2015, or alternatively that his counsel was ineffective for failing to object to the amendment. We disagree. We review unpreserved issues for plain error. See *Carines*, 460 Mich at 764-765.

Defendant's counsel specifically stated that he had no objection to the amendment of the information. Defendant thus has waived this issue. *Carter*, 462 Mich at 216; *Kowalski*, 489 Mich at 504-505. Notwithstanding this waiver, the trial court did not err, plainly or otherwise, by allowing the prosecution to amend the information.

An information shall inform the defendant of the nature of the offense charged and "[t]he time of the offense as near as may be." MCL 765.45(1)(a) and (b). However, "[n]o variance as to time shall be fatal unless time is of the essence of the offense." MCL 767.45(1)(b); see also *Dobek*, 274 Mich App at 83. The trial court should grant the prosecution's motion to amend an information unless amendment would result in "unacceptable prejudice to the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend." *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993).

Defendant argues that the trial court erred by allowing the prosecution to amend the information because the date on which the offense was committed was of "utmost importance" since "[t]he facts at preliminary examination and at trial only supported a finding for one alleged date of the identity theft, September 3, 2013." We disagree. As discussed, time is not an

---

[3] The Corpus of Contemporary American English (COCA) is a database containing "more than 560 million words of text (20 million words each year 1990-2017)" that are "equally divided among spoken, fiction, popular magazines, newspapers, and academic texts." *Corpus of Contemporary American English*, <https://corpus.byu.edu/coca/>. Our Supreme Court has stated that *Corpus* provides empirical data regarding the ordinary usage of words in a way that is both quantifiable and verifiable. *People v Harris*, 499 Mich 332, 347; 885 NW2d 832 (2016). It contains 12,207 instances of the word "obtain," comparable with the 14,747 instances of the word "operate," which this Court has determined has a self-evident meaning. See *Martin*, 271 Mich App at 352.

element of the offense of identity theft. See MCL 775.65. Accordingly, time was not of the essence in this case and the variance in time was not fatal to the information. MCL 767.45(1)(b); see also *Dobek*, 274 Mich App at 83.

Moreover, the amendment did not unacceptably prejudice defendant. The prosecution moved to amend the information on the first day of trial. However, the prosecution stated during pre-trial proceedings several months before trial that it was proceeding on the theory that defendant was guilty of identity theft for continuing to use Mayer's identity "each additional month that the bill goes on." Defendant has not demonstrated that he suffered unacceptable prejudice from the amendment of the information. *Hunt*, 442 Mich at 364. And again, defendant's counsel was not ineffective for failing to make a futile objection to the amendment of the information. *Ericksen*, 288 Mich App at 201.

## IV. PROSECUTORIAL ERROR[4]

Defendant argues that the trial court erred by allowing the prosecution to make misstatements of the law that prejudiced defendant, or in the alternative that his counsel was ineffective for failing to object to those statements. We disagree. We review unpreserved claims of prosecutorial error for plain error affecting a defendant's substantial rights. *Unger*, 278 Mich App at 235.

Prosecutorial error occurs if the prosecution's actions deny the defendant a fair and impartial trial. *Dobek*, 274 Mich App at 63. The prosecution may deny a defendant's right to a fair trial by making improper remarks that infringe on a defendant's constitutional rights or by making remarks that "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v DeChristoforo*, 416 US 637, 643; 94 S Ct 1868; 40 L Ed 2d 431 (1974). The prosecution's clear, uncorrected misstatement of the law may deprive the defendant of a fair trial. *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). However, if the trial court correctly instructs the jury on the law, the prosecution's erroneous legal argument may be cured. *Id*.

Here, the prosecution stated during opening statements that the jury could find defendant guilty of identity theft even if it found that he did not provide DTE with Mayer's information

---

[4] Although defendant refers to his claim as one of "prosecutorial misconduct," this Court has stated that, "the term 'misconduct' is more appropriately applied to those extreme . . . instances where a prosecutor's conduct violates the rules of professional conduct or constitutes illegal conduct," but that claims "premised on the contention that the prosecutor made a technical or inadvertent error at trial" are "more fairly presented as claims of 'prosecutorial error[.]' " *People v Cooper*, 309 Mich App 74, 87–88; 867 NW2d 452 (2015) (citation omitted). Nevertheless, regardless of "what operative phrase is used, [this Court] must look to see whether the prosecutor committed errors during the course of trial that deprived defendant of a fair and impartial trial." *Id*. at 88, citing *People v Aldrich*, 246 Mich App 101, 110; 631 NW2d 67 (2001). Here, we will refer to defendant's claim as prosecutorial error because defendant argues that the prosecution made "misstatements of the law that were never corrected" by the trial court.

because "[h]e continued to operate, continued to get the bills, continued to pay, admittedly using her name and social security number." During closing arguments, the prosecution similarly argued that "the defendant used the personal identifying information of Robin Miller [sic]. . . . It was a dispute about whether he opened it purposefully or not, but even if he didn't open it purposefully, he still recognized at least six months according to his own words that the account was in her name and he kept it there and kept using it." As we have discussed, the jury could in fact have found defendant guilty without finding that he was the one who provided Mayer's personal information when the account was opened. Further, as we have also discussed, any error was cured by the trial court's correct instruction on the applicable law. For the same reasons, defendant's counsel was not ineffective for failing to challenge the prosecution's statements. *Ericksen*, 288 Mich App at 201.

## V. SUFFICIENCY OF THE EVIDENCE

Defendant also argues that the evidence was insufficient to support his conviction for identity theft. We disagree. This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction. *People v Meissner*, 294 Mich App 438, 452; 812 NW2d 37 (2011). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution proved the crime's elements beyond a reasonable doubt. *Id*. Conflicting evidence and disputed facts are to be resolved by the trier of fact. See *People v Yost*, 468 Mich 122, 133 n 14; 659 NW2d 604 (2003). Minimal circumstantial evidence and reasonable inferences can sufficiently prove the defendant's state of mind, knowledge, or intent. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). An intent to defraud requires that the prosecution show that defendant acted with an intent to cheat or deceive. *Brown*, 239 Mich App at 747.

Again, MCL 445.65 provides in pertinent part:

(1) A person shall not do any of the following:

(a) With intent to defraud or violate the law, use or attempt to use the personal identifying information of another person to do either of the following:

(*i*) Obtain . . . services . . .

Defendant argues that there was no evidence presented that he gave Mayer's information to DTE. As discussed above, *providing* another's personal information to a utility or other service provider is not an element of the offense. Moreover, a DTE employee testified that the account on Elm Lane could only have been created by someone providing Mayer's social security number over the phone. Defendant, Mayer's ex-husband, would have had access to Mayer's social security number at some point. Defendant admitted to calling DTE to set up an account for Elm Lane in September 2013. Although defendant denied having Mayer's social security number and testified that he believed that DTE had erroneously caused Mayer's information to be entered on his account, the jury was free to disbelieve defendant.

Moreover, even accepting defendant's claim that he did not provide DTE with Mayer's information, there was sufficient evidence to establish that defendant used Mayer's information to obtain services because the prosecution established that defendant was aware that DTE

-8-

services were provided to defendant's address under Mayer's information for several months, yet continued to avail himself of that service. Defendant testified that he had received bills with Mayer's name on them. A DTE employee testified that the bills for the account were paid by money order, and that defendant had never sought to correct the information on the account. Defendant paid the bills for the account, and when Mayer received a past-due bill, defendant paid it without commenting on the fact that the account was in Mayer's name. Viewed in the light most favorable to the prosecution, there was enough evidence for a rational trier of fact to determine beyond a reasonable doubt that defendant was guilty of using Mayer's information to obtain services. *Meissner*, 294 Mich App at 452.

Defendant also argues that there was insufficient evidence of his intent to defraud. We disagree. A defendant's imposition of loss on another may be evidence of an intent to defraud. *Brown*, 239 Mich App at 747. Mayer testified that she received past-due bills from DTE, and that her credit was negatively affected by defendant's failure to pay in a timely fashion, although defendant ultimately paid the bills. The record also reflects that a federal tax lien was placed on Mayer's home, although the home was in her new husband's name. Mayer's testimony establishes that she suffered a loss from defendant's conduct. Additionally, defendant paid the bills on the account and never sought to correct the account information; yet, when Mayer terminated the service defendant was able to activate service in his own name that same day, suggesting that defendant knew that he could have rectified the situation relatively easily if he had been so inclined. This evidence, viewed in the light most favorable to the prosecution, *Meissner*, 294 Mich App at 452, and with minimal circumstantial evidence being necessary to show intent, *Kanaan*, 278 Mich App at 622, suffices to allow a reasonable jury to conclude defendant had the intent to defraud. *Brown*, 239 Mich App at 747.

## VI. CONSTITUTIONALITY OF MCL 445.65(1)

Defendant also argues that MCL 445.65(1) is unconstitutionally vague because it fails to give fair notice of what behavior it prohibits. We disagree. We review for plain error an unpreserved challenge to the constitutionality of a statute. *People v Lawhorn*, 320 Mich App 194, 197 n 1; 907 NW2d 832 (2017). We review de novo issues of statutory interpretation. See *Williams*, 475 Mich at 250.

The void-for-vagueness doctrine is derived from the Due Process Clauses of the Fourteenth Amendment and Const 1963, art 1, § 17, which guarantee that the state may not deprive a person of life, liberty, or property without due process of law. *People v Roberts*, 292 Mich App 492, 497; 808 NW2d 290 (2011). "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *People v Boomer*, 250 Mich App 534, 539; 655 NW2d 255 (2002), quoting *Grayned v City of Rockford*, 408 US 104, 108; 92 S Ct 2294; 33 L Ed 2d 222 (1972) (quotation marks omitted). A penal statute is unconstitutionally vague if (1) it does not provide fair notice of the prohibited conduct, (2) it encourages arbitrary or discriminatory enforcement, or (3) its coverage is overbroad and impinges on First Amendment freedoms. *Boomer*, 250 Mich App at 539. Defendant does not contend that MCL 445.65(1) impinges on First Amendment freedoms.

Defendant argues that MCL 445.65(1) fails to provide fair notice of what conduct it prohibits because it fails to define the terms "use" or "obtain." We disagree. A statute provides fair notice when it "give[s] a person of ordinary intelligence a reasonable opportunity to know

what is prohibited . . . ." *Roberts*, 292 Mich App at 497. Fair notice exists when the statute's meaning can be determined by referencing judicial interpretations, common law, dictionaries, treatises, or the common meanings of words. *People v Beam*, 244 Mich App 103, 105; 624 NW2d 764 (2000).

We have already concluded that the verb "obtain" is a commonly-used term capable of being interpreted through the use of a dictionary or through common usage. The verb "to use" is also defined in the dictionary, with the most common definition being "to put into action or service : avail oneself of," but also "to carry out a purpose or action by means of," among other definitions. *Merriam-Webster's Collegiate Dictionary* (11th ed). And the word "use," is extremely common. We find unpersuasive defendant's argument that a prohibition against the "use" of another's personal information to "obtain services" would not provide fair notice to a person of ordinary intelligence that the statute also prohibited continuing to receive such services with the intent to defraud, even if the person charged had not initially provided the other person's personal information in order to begin obtaining services. *Roberts*, 292 Mich App at 497.

Defendant also asserts that the statute permits arbitrary enforcement because "almost everyone has problems with bills from one company or another." But defendant provides no significant argument or citation to legal authority. "An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue." *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Nonetheless, we note that the statute requires proof of the intent to defraud. The intent to defraud is the specific intent to cheat or deceive. *People v Brown*, 239 Mich App 735, 747; 610 NW2d 234 (2000). Specific-intent requirements generally alleviate vagueness concerns. *Id*. Contrary to defendant's argument, the statute does not permit the conviction of persons who accidentally or innocently receive or pay for services meant for another. We conclude that the statute does not provide for arbitrary enforcement.

Affirmed.


/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Jonathan Tukel