*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

TONYA DESIRAE PETERSON,

Defendant-Appellant.

UNPUBLISHED
January 28, 2021

No. 348588
Wayne Circuit Court
LC No. 18-006116-02-FH

Before: JANSEN, P.J., and SERVITTO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right her jury trial conviction of involuntary manslaughter, MCL 750.321. Defendant was sentenced to 17 months to 15 years' imprisonment. We reverse, vacate defendant's conviction and sentence, and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the July 2018 death of the minor victim, who died after falling through a hole in defendant's home. When the incident occurred, the victim lived in defendant's home with her mother, Dasiah Jordan. Defendant, Tanisha Epps, Epps's four children, and Jordan's two other children also lived there. A room on the main floor of the house, "the blue room," had a 13-inch by 16-inch hole in the floor that led directly to the basement. Before Jordan moved in, Epps covered the hole, and she and defendant used the blue room exclusively for storage. After Jordan moved into defendant's home in March 2018, she converted the blue room into a bedroom for herself and her children. Jordan changed the lock on the door and was the only person in the house who had a key. By July 2018, the hole was covered with a piece of cardboard, and the basement was flooded with about a foot of standing water. Although it is unclear how long before the incident the basement flooded, Jordan's 11-year-old daughter, SJ, testified that it was already flooded when she and her family moved in.

The night the incident occurred, defendant and Epps left Jordan at home with six of the children. Jordan later left as well, leaving the children home alone. The two oldest children, SJ and one of Epps's daughters, were 10 years old. The youngest child, the victim, was 11 months old. SJ testified that Jordan did not lock the door to the blue room before she left. After defendant

returned home, one of the children stated that it appeared as though someone fell through the hole. Epps found the victim in the basement. The victim was declared dead later that night. Her cause of death was drowning.

At trial, the prosecution, defense counsel, and the trial court discussed the jury instructions. The prosecution's proposed instructions described defendant as a "landlord." At the prosecution's request, the trial court changed the word "landlord" to "homeowner." Defense counsel objected to the change, arguing that it also changed the prosecution's theory of the case. The trial court instructed the jury as follows:

> The defendant Tonya Peterson is charged with Count 2, the crime of Involuntary Manslaughter resulting from failure to perform a legal duty. To prove this charge the prosecutor much [sic: must] prove each of the following elements beyond a reasonable doubt.
>
> First, that the defendant had a legal duty to [the victim]. The legal duty charged here is to provide a safe environment as the homeowner and the babysitter of [the victim]. Second, the defendant knew of the facts that gave rise to the duty . . . .
>
> Third, that the defendant willfully neglected or refused to perform that duty. And her failure to perform it was grossly negligent to human life. Forth [sic], that the death of [the victim] was directly caused by the defendant's failure to perform this duty. That is, that [the victim] died as a result of the defendant's failure to provide a safe environment.

During closing arguments, the prosecution defined gross negligence, and defense counsel briefly applied the concept of gross negligence to the facts of the case. Defense counsel primarily focused on the defense theory that Jordan, not defendant, caused the victim's death. Ultimately, the jury convicted defendant of involuntary manslaughter, and the trial court sentenced defendant as noted *supra*. This appeal followed.

## II. STANDARD OF REVIEW

Defendant first argues the trial court erroneously instructed the jury on the duty element of involuntary manslaughter. We agree.

"Generally, [t]his Court reviews de novo claims of instructional error. *People v Spaulding*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 348500); slip op at 7 (quotation marks and citation omitted; alteration in original). "Jury instructions are reviewed in their entirety to determine if there is error requiring reversal." *Id*. at ___; slip op at 8 (quotation marks and citation omitted).

## III. ANALYSIS

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *People v Miller*, 326 Mich App 719, 727; 929 NW2d 821 (2019), citing *People v Kowalski*, 489 Mich 488, 501; 803

NW2d 200 (2011) (quotation marks omitted). "A court must properly instruct the jury so that [it] may correctly and intelligently decide the case. The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (quotation marks and citations omitted) (alteration in original). "[I]nstructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id*. at 34 (quotation marks, citation, and emphasis omitted). "[A]n imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. (quotation marks and citation omitted). Reversal is only warranted if, "after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." MCL 769.26.

A conviction of involuntary manslaughter can be based on a defendant's failure to perform a legal duty. See *People v Holtschlag*, 471 Mich 1, 16; 684 NW2d 730 (2004) (discussing how failure to perform a legal duty has been cited as one theory giving rise to involuntary manslaughter); *People v Zak*, 184 Mich App 1, 14; 457 NW2d 59 (1990) ("[I]nvoluntary manslaughter can be established on the basis of the failure to perform a legal duty . . . .").[1] "[A] duty of care may arise by way of statute, a contractual relationship, or the common law." *Powell-Murphy v Revitalizing Auto Communities Environmental Response Trust*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 348690); slip op at 3. Here, the prosecution's theory of the case was that defendant failed to perform the legal duty she owed the victim as the owner of the home in which the victim lived.

Defendant correctly argues that the trial court erroneously instructed the jury that defendant owed the victim the common-law duty owed to an invitee, when the correct common-law duty was that owed to a licensee. The distinction between a licensee and an invitee is generally governed by principles set forth in *Stitt v Holland Abundant Life Fellowship*, 462 Mich 591; 614 NW2d 88 (2000). See *Sanders v Perfecting Church*, 303 Mich App 1, 4-5; 840 NW2d 401 (2013) (quoting *Stitt* for the definitions of licensee and invitee and the legal duties associated therewith). In *Stitt*, our Supreme Court stated that "a landowner's duty to a visitor depends on that visitor's status." *Stitt*, 461 Mich at 596. A visitor may be a trespasser, a licensee, or an invitee.[2] *Id*. As the *Stitt* Court explained:

> A "licensee" is a person who is privileged to enter the land of another by virtue of the possessor's consent. A landowner owes a licensee a duty only to warn the licensee of any hidden dangers the owner knows or has reason to know of, if the licensee does not know or have reason to know of the dangers involved. The landowner owes no duty of inspection or affirmative care to make the premises safe

---

[1] "Although not binding authority, decisions of this Court before November 1, 1990, may be persuasive." *People v Morrison*, 328 Mich App 647, 651 n 1; 939 NW2d 728 (2019).

[2] Licensee and invitee are the only categories at issue in this case.

for the licensee's visit. Typically, social guests are licensees who assume the ordinary risks associated with their visit . . . .

An "invitee" is a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception. The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law. [*Id*. at 596-597 (quotation marks and citations omitted) (alterations in original).]

Significantly, "[i]n order to establish invitee status, a plaintiff must show that the premises were held open for a *commercial* purpose." *Id*. at 605.

In this case, the evidence showed that defendant did not charge Jordan rent to live in her home. Defendant therefore did not hold open her home to the victim and her family for a "commercial purpose," and, accordingly, they were not invitees. *Id*. Rather, the victim and her family were licensees because they were in defendant's home "by virtue of [defendant's] consent." *Id*. at 596. Because the victim and her family were licensees, defendant did not have a common-law duty of "affirmative care to make the premises safe" for the victim. *Id*. The trial court therefore erroneously instructed the jury that defendant had a legal duty "to provide a safe environment" to the victim.

We conclude that where the duty instruction given to the jury was based on the common-law duty defendant owed the victim as a homeowner, the trial court's instructions on involuntary manslaughter, taken as a whole, did not fairly present the issue for trial and protect defendant's rights. Again, the prosecution charged defendant with involuntary manslaughter on the basis of the theory that defendant failed to perform a legal duty that she owed to the victim. Thus, the jury's understanding of the legal duty defendant owed the victim was therefore a central issue at trial.

As stated *supra*, the trial court instructed the jury on involuntary manslaughter as follows:

The defendant Tonya Peterson is charged with Count 2, the crime of Involuntary Manslaughter resulting from failure to perform a legal duty. To prove this charge the prosecutor much [sic: must] prove each of the following elements beyond a reasonable doubt.

First, that the defendant had a legal duty to [the victim]. The legal duty charged here is to provide a safe environment as the homeowner and the babysitter of [the victim]. Second, the defendant knew of the facts that gave rise to the duty . . . .

Third, that the defendant willfully neglected or refused to perform that duty. And her failure to perform it was grossly negligent to human life. Forth [sic], that

the death of [the victim] was directly caused by the defendant's failure to perform this duty. That is, that [the victim] died as a result of the defendant's failure to provide a safe environment.

Each of the other elements of involuntary manslaughter relied on the premise that defendant owed the victim a duty to "provide a safe environment." Although the conditions within defendant's home were undeniably dangerous, defendant did not owe the victim—a licensee—a common-law duty of affirmative care to make the home safe.

On the basis of the foregoing, we conclude that in this case, after a thorough examination of the entire record before us, to allow the trial court's instructional error regarding the duty defendant owed to the victim to stand would result in a miscarriage of justice. Thus, reversal is warranted, and defendant is entitled to a new trial.

Defendant also argues on appeal that the trial court erred by failing to instruct the jury on proximate causation and gross negligence, and that defense counsel was ineffective for failing to ask the trial court to change its instruction on duty, and failing to request instructions on proximate causation and gross negligence. However, having determined that the trial court's failure to properly instruct the jury on the element of duty requires defendant receive a new trial, we need not address the remainder of defendant's claims on appeal.

We do briefly note, however, that we take judicial note of the fact that the victim's mother, Jordan, pleaded guilty to second-degree child abuse, MCL 750.136b(3), and involuntary manslaughter, MCL 750.321c, in connection with her involvement in the incident resulting in victim's death. As our Supreme Court explained in *People v Feezel*, 486 Mich 184, 195; 783 NW2d 67 (2010), citing *People v Schaefer*, 473 Mich 418, 436-437; 703 NW2d 774 (2005), "[p]roximate causation 'is a legal construct designed to prevent criminal liability from attaching when the result of the defendant's conduct is viewed as too remote or unnatural.' If the finder of fact determines that an intervening cause supersedes a defendant's conduct 'such that the casual link between the defendant's conduct and the victim's injury was broken,' proximate cause is lacking and criminal liability cannot be imposed." On remand for a new trial, the parties, and the trial court, may wish to evaluate whether any of defendant's alleged criminal conduct was superseded by Jordan's criminal conduct.

We reverse, vacate defendant's conviction and sentence, and remand for a new trial. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Deborah A. Servitto
/s/ Michael J. Riordan