*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DUSTIN DAVID TUCKER,

        Defendant-Appellant.

UNPUBLISHED
January 11, 2024

No. 362478
St. Clair Circuit Court
LC No. 21-001372-FC

Before: K. F. KELLY, P.J., and JANSEN and HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree premeditated murder, MCL 750.316(1)(a),[1] second-degree arson, MCL 750.73(1), and unlawful imprisonment, MCL 750.349b. The trial court sentenced defendant to concurrent prison terms of life imprisonment without parole for the first-degree murder conviction, 11 to 20 years' imprisonment for the second-degree arson conviction, and 8 to 15 years' imprisonment for the unlawful imprisonment conviction. We affirm.

## I. OVERVIEW OF FACTS

Defendant's convictions arise from the May 28, 2021 strangulation death of Danielle Smith, whose body was subsequently set on fire. The prosecution presented evidence that defendant was in a relationship with his then live-in girlfriend, Shelby Cesefske, but also was secretly involved in a relationship with Smith. Smith created certain Facebook posts about defendant, including that she was pregnant with his child, and she shared with other people that she and defendant were engaged. In response to Cesefske's complaints about Smith, defendant made comments to Cesefske about Smith being crazy and his intentions to kill Smith, who had a

---

[1] Defendant was charged with first-degree murder under alternative theories of first-degree premeditated murder and first-degree felony murder, MCL 750.316(1)(a) and (b). The jury found defendant guilty of first-degree murder under both theories. The trial court sentenced defendant for first-degree premeditated murder.

-1-

medical condition that limited her ability to walk without assistance and to use the stairs. The prosecution's theory at trial was that defendant planned to kill Smith because she was causing recurring problems in his relationship with Cesefske, and that he subsequently went to Smith's house, carried or dragged her into the basement, strangled her, and then set her body on fire to cover up evidence of the crime. Smith's heavily charred body was discovered the next morning.

Surveillance video from Cesefske's residence and another nearby residence, as well as cellular record maps, captured many of defendant's movements around the time of Smith's death. Facebook messages and defendant's recorded police interview were also admitted at trial. During his interview, defendant admitted that he argued with Smith, carried or dragged her to the basement, squeezed her neck, pushed her down, causing her head to hit the cement floor, and then set her on fire. Defendant had scratches on his body and his DNA was found under one of Smith's fingernails.

The principal defense theory at trial was that defendant did not act with premeditation. The defense also asserted that Cesefske was not a reliable witness, and she made statements against defendant to avoid being charged. The defense argued that, on the basis of the reliable evidence presented during trial, the jury should convict defendant of only manslaughter and second-degree arson. The jury found defendant guilty as charged of first-degree murder, second-degree arson, and unlawful imprisonment.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant challenges the sufficiency of the evidence in support of his convictions of both first-degree premeditated murder and unlawful imprisonment, which also served as the predicate felony for his felony-murder conviction. We review de novo a challenge to the sufficiency of the evidence. *People v Speed*, 331 Mich App 328, 331; 952 NW2d 550 (2020). When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

## A. PREMEDITATION

Defendant argues that the prosecution failed to present sufficient evidence to establish the requisite element of premeditation to support his conviction of first-degree premeditated murder. We disagree.

First-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v Ortiz*, 249 Mich App 297, 301; 642 NW2d 417 (2001). Premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v Anderson*, 209 Mich App 527, 537; 531 NW2d 780 (1995). "That is, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation, but it is within the province of the fact-finder to determine whether there was sufficient time for a reasonable person to subject his or her action

to a second look." *People v Oros*, 502 Mich 229, 242; 917 NW2d 559 (2018) (quotation marks and citation omitted). "While the minimum time necessary to exercise this process is incapable of exact determination, it is often said that premeditation and deliberation require only a brief moment of thought or a matter of seconds." *Id*. at 242-243 (quotation marks, brackets, and citations omitted). "The requisite state of mind may be inferred from defendant's conduct judged in light of the circumstances." *Id*. at 243 (citation omitted.) The following factors may be considered to establish premeditation: "(1) the prior relationship of the parties, (2) the defendant's actions before the killing, (3) the circumstances of the killing itself, and (4) the defendant's conduct after the homicide." *People v Unger*, 278 Mich App 210, 229; 749 NW2d 272 (2008). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

The evidence (1) that defendant, who was romantically involved with Smith, was upset about Smith's Facebook posts and her causing recurring problems in his relationship with his live-in girlfriend, Cesefske, (2) that defendant indicated to Cesefske that he could help Smith die and it would occur on May 28 or 29, 2021 (3) that on May 28, 2021, defendant went to Smith's home and strangled her for several minutes to cause her death, (4) that he set Smith's body on fire, and (5) that he then returned home and told Cesefske that they did not have to worry about Smith because her neck was broken, viewed in a light most favorable to the prosecution, was sufficient to enable a jury to find premeditation and deliberation beyond a reasonable doubt.

A jury could have reasonably inferred from this evidence that defendant formed a plan to kill Smith, particularly on the basis of his comments to Cesefske before going to Smith's house, his acts of dragging Smith into the basement and returning to her house with a large can of a gas mixture that he made, and his comments to Cesefske after returning home. The evidence also supports an inference that defendant had an adequate opportunity to take a "second look" at his actions during the "several minutes" that, according to the medical examiner, it would have taken for defendant to apply significant force to Smith's neck to cause her death by manual strangulation. Although the brutal nature of a killing or manual strangulation alone is insufficient to show premeditation, "evidence of manual strangulation can be used as evidence that a defendant had an opportunity to take a 'second look.' " *People v Johnson*, 460 Mich 720, 733; 597 NW2d 73 (1999). The evidence that defendant announced in front of witnesses that he was having a "guy's night out" before going to Smith's house and that he needed the gas can to make a bonfire, neither of which occurred, also supports an inference that he attempted to manufacture an alibi because he deliberated killing Smith.

In addition, evidence that, after killing Smith, defendant dumped a gas mixture on her body and set her on fire "to cover evidence," which defendant admitted during his police interview, further supports a finding of premeditation. A defendant's attempt to conceal a killing also can be used as evidence of premeditation. *People v Gonzalez*, 468 Mich 636, 641; 664 NW2d 159 (2003). Consequently, considering the nature and circumstances surrounding the killing, a jury could have rationally inferred that defendant acted on a decided course of action rather than an unplanned impulse. The evidence was sufficient to support defendant's conviction of first-degree premeditated murder.

Defendant essentially argues that the evidence was insufficient to sustain his conviction because the prosecution failed to present evidence to show that the killing did not occur in the heat

of passion, and because, although there was evidence that defendant referenced assisting Smith in committing suicide and killing Smith by drowning her, that testimony does not support a finding of premeditation because that is not how Smith was killed. However, defendant's challenges, including what inferences could be drawn from the evidence, are related to the weight and credibility of the evidence, which were issues for the jury to resolve. See *Kanaan*, 278 Mich App at 619 ("This Court will not interfere with the trier of fact's role of determining the weight of the evidence or the credibility of witnesses.").

The jury observed video evidence that captured defendant's movements going to and from Smith's residence and retrieving a large gas can, his police interview and Facebook messages, and heard testimony about defendant's statements and actions both before and after the killing and Smith's cause of death—manual strangulation. The jury was free to accept or reject the theory of either party in light of the evidence presented at trial, and this Court will not interfere with the jury's role of determining issues of weight and credibility. *People v Baskerville*, 333 Mich App 276, 283; 963 NW2d 620 (2020). Further, this Court is required to resolve all conflicts in the evidence in favor of the prosecution. *Id*. This deferential standard of review is the same whether the evidence is direct or circumstantial, *Nowack*, 462 Mich at 400, and it is well established that "[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime," *id*. (citation omitted). Applying these standards, there was sufficient evidence to enable the jury to find the requisite element of premeditation beyond a reasonable doubt, and this Court will not disturb the jury's verdict.

## B. UNLAWFUL IMPRISONMENT

Defendant also argues that the prosecution failed to present sufficient evidence to support his conviction of first-degree murder under the alternative theory of felony murder because there was no evidence to support the underlying felony of unlawful imprisonment. Again, we disagree.

First-degree felony murder requires proof that the defendant (1) killed the victim, (2) with the intent to kill, to cause great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result (i.e., malice), (3) while committing, attempting to commit, or assisting in the commission of a felony specifically enumerated in MCL 750.316(1)(b). *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007) The underlying felony in this case, which defendant now challenges, was unlawful imprisonment. The elements of unlawful imprisonment are delineated in MCL 750.349b(1) as follows:

> (1) A person commits the crime of unlawful imprisonment if he or she knowingly restrains another person under *any* of the following circumstances:
>
> (a) The person is restrained by means of a weapon or dangerous instrument.
>
> (b) The restrained person was secretly confined.
>
> (c) The person was restrained to facilitate the commission of another felony or to facilitate flight after commission of another felony. [Emphasis added.]

The statute defines "restrain" as "to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts." MCL 750.349b(3)(a).

Preliminarily, defendant argues that the prosecution failed to present sufficient evidence to support the offense of unlawful imprisonment because "[n]o weapon was placed in evidence." In this case, however, the charge of unlawful imprisonment was not based on MCL 750.349b(1)(a)— "[t]he person is restrained by means of a weapon or dangerous instrument." Instead, the record discloses that the offense, as charged, was based on secret confinement or facilitating Smith's murder or second-degree arson under MCL 750.349b(1)(b) or (c). Indeed, in his opening statement, the prosecutor stated:

> Then we move to that Unlawful Imprisonment charge, these are what you're really looking at, and this ties right into Felony Murder as well . . . . And then we've got those or's in that next element. And once again, it's the A, B or C that [the trial court] was doing. *Defendant did so using a weapon. I'll tell you folks right now, I don't think that's going to be argued.* However, those other two prongs are both going to be satisfied. [Emphasis added.]

In his argument on appeal, defendant ignores that the offense of unlawful imprisonment expressly provides alternative theories under which a defendant may be convicted.

Viewed in a light most favorable to the prosecution, the evidence was sufficient to show that defendant restrained Smith to facilitate her murder. MCL 750.349b(1)(c). There was evidence that because of Smith's medical condition, she had a limited ability to walk and was unable to walk up or down stairs. Defendant admitted that he assaulted Smith during his first visit to her house by pushing her down while upstairs, after which he carried or dragged her down the stairs to the basement. Drag marks on the basement floor supported an inference that Smith's body was dragged from the stairs to where her heavily charred body was ultimately found. According to defendant, Smith was alive, but unconscious, when he left her house, went to his house to retrieve a gas can, stopped by a gas station, and returned to Smith's house. The jury could infer from this evidence that defendant forcibly restricted Smith's movement by carrying or dragging her to the basement, knowing that she did not have the ability to walk up the stairs to exit the basement. According to defendant, after he returned to the basement, Smith woke up and he then killed her by pushing her down, causing her to hit her head on the concrete floor. In addition, according to the medical examiner, Smith's cause of death was manual strangulation, and the expert explained that defendant would have had to apply force to Smith's neck for "several minutes," thereby restraining her, to facilitate her murder. The crime of unlawful imprisonment can occur when the victim is "held for even a moment." *People v Chelmicki*, 305 Mich App 58, 70; 850 NW2d 612 (2014).

In sum, the direct and circumstantial evidence was sufficient to permit a rational trier of fact to find beyond a reasonable doubt that defendant restrained Smith to facilitate the commission of her murder. Thus, there was sufficient evidence to prove the elements of unlawful imprisonment beyond a reasonable doubt, thereby satisfying the predicate-felony element of first-degree felony murder. *Nowack*, 462 Mich at 400.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Kathleen Jansen
/s/ Noah P. Hood