*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 11, 2026
10:23 AM

Plaintiff-Appellee,

v

No. 371586
Wayne Circuit Court
LC No. 22-001659-01-FC

JERAH ANTHONY ARNOLD,

Defendant-Appellant.

Before: BORRELLO, P.J., and M. J. KELLY and ACKERMAN, JJ.

PER CURIAM.

A jury convicted defendant of possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was acquitted of second-degree murder, MCL 750.317, the predicate felony for one of the felony-firearm charges. The trial court sentenced defendant as a third-offense habitual offender, MCL 769.12, to 34 to 120 months' imprisonment for felon-in-possession and five years' imprisonment for each felony-firearm conviction, to be served concurrent to one another but consecutive to the felon-in-possession sentence.

On appeal, defendant asserts that trial counsel provided ineffective assistance by failing to request a self-defense instruction relative to the felony-firearm counts. We agree with respect to the count predicated on the second-degree murder charge and therefore vacate that conviction and sentence and remand for a new trial. We otherwise affirm defendant's convictions and sentences.

## I. BACKGROUND

This case arises from the shooting death of defendant's girlfriend, Kelly Forsythe, on January 1, 2022, at the home of Forsythe's sister, Alisha James. Trial testimony established that defendant, his minor son, Forsythe, and a friend traveled to James's house, where she was hosting a gathering with her roommate, Aspasia Simmon. Defendant and Forsythe appeared intoxicated when they arrived and argued intermittently throughout the evening.

According to James and Simmon, defendant at one point pulled a knife on Forsythe. Simmon testified that Forsythe knocked the knife from his hand, while James stated that defendant dropped it. Simmon further testified that defendant then strangled Forsythe until her eyes "roll[ed] into the back of her head" and she briefly lost consciousness. By that time, James and defendant were arguing, and James struck defendant in the face, knocking his glasses to the ground. Defendant exited the house, and Forsythe, James, and Simmon watched from the front porch as he walked to Forsythe's car, retrieved a gun from under the hood, and pointed it at the women. As defendant approached the home, James and Simmon ran inside to protect their children. James testified that she heard six gunshots; Simmon described hearing five or six gunshots, followed by a pause and then three more. Neither witnessed the shooting.

Approximately five minutes later, James left the basement where she had been hiding and saw Forsythe's car drive away. When James and Simmon found Forsythe outside, she was unresponsive and bleeding from her chest. James called the police, and emergency responders pronounced her dead at the scene. The cause of death was determined to be a single gunshot wound to the chest.

Defendant testified in his own defense, denying that he strangled Forsythe. He claimed that she had fallen asleep after consuming alcohol and marijuana and that he was merely attempting to wake her by shaking her shoulders. He further testified that James, apparently upset about the purported strangling, confronted him with a pistol. Forsythe, now awake, saw the gun and began pushing defendant toward the front door. Defendant then called James a "bitch," and she responded by striking him in the face and back of the head with the pistol. Defendant's child ran outside, and defendant followed, placing the child in the backseat of Forsythe's car.

Defendant testified that, fearing James would shoot him, he retrieved a handgun that Forsythe kept under the hood of her car. He claimed that he did not want to shoot it because he was concerned about hitting Forsythe. According to defendant, James then shot him, striking him twice in the leg. He remained near the car and returned fire toward the muzzle flashes. He later saw Forsythe sitting on the ground, and she asked whether he had shot her. Defendant told her to get in the car and waited for her, but she did not come. He testified that he wanted to help move her into the car but could not move his leg. He then drove to the home of an ex-girlfriend, who drove him to a hospital for treatment.

On cross-examination, James and Simmon acknowledged inconsistencies between their trial testimony and prior statements to police but maintained that neither of them possessed a gun during the altercation. Investigators recovered shell casings inside James's home, and the officer in charge concluded that shots had been fired from inside the house, although no firearms were recovered. The medical examiner was unable to determine the trajectory of the fatal shot but opined that it was possible that Forsythe was shot from inside the home.

After the presentation of evidence, defendant argued that he acted in self-defense and defense of others, emphasizing his testimony and evidence that shots were fired from the house toward him and his son. At defense counsel's request, the trial court instructed the jury on M Crim JI 7.15 (use of deadly force in self-defense), M Crim JI 7.16 (conditions for using force or deadly force), M Crim JI 7.18 (deadly aggressor-withdrawal), and M Crim JI 7.25 (self-defense as to felon-in-possession).

During deliberations, the jury submitted three questions. After consulting with the parties, the court clarified which felony-firearm charge corresponded to each predicate felony. When the jury asked about lesser offenses for second-degree murder, the court instructed it to disregard that portion of the instructions because no lesser-offense instructions had been given. The jury also asked whether it could convict on felony-firearm if it acquitted on the predicate felony, but the court declined to clarify and instead directed the jury to reread the felony-firearm instruction, M Crim JI 11.34.

The jury initially reported that it had reached a verdict on two charges but was deadlocked on the others. After the trial court read the deadlocked jury instruction, M Crim JI 3.12, the jury resumed deliberations and ultimately found defendant not guilty of second-degree murder but guilty of felon-in-possession and both counts of felony-firearm. The trial court sentenced defendant as described above, and this appeal followed.

## II. DISCUSSION

Defendant asserts—and the prosecution concedes—that trial counsel provided ineffective assistance by failing to request a self-defense instruction relative to the felony-firearm charges.

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). "A judge must first find the facts, then must decide whether those facts establish a violation of the defendant's constitutional right to the effective assistance of counsel." *Id*. (citation omitted). We review the trial court's factual findings for clear error and questions of law de novo. *Id*. Because no *Ginther*[1] hearing was held, our "review is limited to mistakes apparent from the record." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

Both the United States and Michigan Constitutions guarantee criminal defendants the right to the assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant asserting ineffective assistance "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

### A. DEFICIENT PERFORMANCE

To establish deficient performance, a defendant must demonstrate that "counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and citation omitted). Counsel is presumed effective, and a defendant alleging ineffective assistance "must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *Id*. We do not "second-guess counsel on matters of trial strategy" or "assess

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (citation omitted).

A criminal defendant is entitled to a properly instructed jury. *People v Guajardo*, 300 Mich App 26, 34; 832 NW2d 409 (2013). "The instruction to the jury must include all elements of the crime charged, and must not exclude from jury consideration material issues, defenses or theories if there is evidence to support them." *People v Traver*, 502 Mich 23, 31; 917 NW2d 260 (2018) (citation omitted). "Trial counsel's failure to request a jury instruction may constitute an unreasonably deficient level of performance." *Yeager*, 511 Mich at 490; see also *People v Leffew*, 508 Mich 625, 646; 975 NW2d 896 (2022) (holding that trial counsel rendered ineffective assistance by failing to request a jury instruction that supported the defense theory of the case). But "an affirmative-defense instruction is not automatic upon request." *Id*. at 644. "In order to properly raise the defense, the defendant has the burden of producing some evidence from which the jury can conclude that the essential elements of the defense are present." *Id*. (cleaned up). That burden "is not a heavy one," however: "a defendant who puts forward some evidence in support of their affirmative-defense theory is entitled to an instruction on that theory." *Id*.

In this case, defense counsel requested—and the trial court provided—several self-defense instructions, including those addressing the use of deadly force, conditions for using force or deadly force, deadly aggressor-withdrawal, and self-defense as to felon-in-possession. Counsel did not, however, request M Crim JI 11.34(c) (self-defense as to felony-firearm), which provides:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be, with no duty to retreat, if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

On appeal, defendant and the prosecution agree that the evidence supported that instruction and that counsel's failure to request it was objectively unreasonable. The defense theory was that defendant acted in self-defense, and evidence supported that theory. Defendant testified that James struck him with a gun, threatened his life, and fired at him, prompting him to return fire out of fear for himself and his son. Investigators also recovered shell casings inside the home, corroborating the possibility that shots were fired from within.

The trial court recognized that the evidence supported self-defense instructions and instructed the jury accordingly on other charges. Given counsel's reliance on a self-defense theory and the supporting evidence, there is no apparent strategic reason for failing to request the corresponding instruction on felony-firearm. See *Leffew*, 508 Mich at 646 (holding that counsel's failure to request a self-defense instruction constituted ineffective assistance when counsel "presented evidence and arguments leading the jury to an acquittal under a defense-of-others theory only to deprive jurors of a judge-given map to reach that destination"). Under these circumstances, counsel's failure to request a self-defense instruction as to the felony-firearm charges fell below an objective standard of reasonableness.

B. PREJUDICE

In addition to demonstrating deficient performance, defendant must also show that the deficient performance prejudiced him. "Prejudice means 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), quoting *Strickland*, 466 US at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Randolph*, 502 Mich at 9 (citation omitted).

"Jury instructions are to be read as a whole and, even if somewhat imperfect, no error exists if the instructions fairly presented the issues to be tried and sufficiently protected the defendant's rights." *People v Lockett*, 295 Mich App 165, 185; 814 NW2d 295 (2012). In other words, "no error results from the absence of an instruction as long as the instructions as a whole cover the substance of the missing instruction." *Leffew*, 508 Mich at 647 (cleaned up).

In this case, the prosecution concedes prejudice with respect to the felony-firearm conviction predicated on second-degree murder, and we agree. The jury acquitted defendant of second-degree murder—after receiving self-defense instructions—yet convicted him of felony-firearm predicated on that same offense. As we recently explained in *People v Kilgore*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365881); slip op at 5:

> Mere inconsistency alone, of course, is not sufficient to call into question the validity of a conviction. See *People v Putnam*, 309 Mich App 240, 251; 870 NW2d 593 (2015). Relatedly, an acquittal on a predicate felony does not invalidate a related felony-firearm conviction. *People v Lewis*, 415 Mich 443, 454-455; 330 NW2d 16 (1982). But, when, as here, there is an error in the jury instructions that appear to (i) provide a defense for the charge on which the jury acquitted but (ii) foreclose the same defense on the related charge on which the jury convicted, the probability that the conviction resulted from jury confusion rather than jury choice is too high to ignore.

The same is true here. Defendant has demonstrated a reasonable probability that, had the jury been properly instructed on self-defense as to felony-firearm, it would have reached a different result. Accordingly, defendant's conviction for the felony-firearm charge predicated on second-degree murder must be vacated.

Our analysis does not end there. On appeal, defendant asks this Court to vacate both felony-firearm convictions "and remand to the trial court with instructions to dismiss the charges of felony[-]firearm with prejudice." We decline that request. As an initial matter, when trial counsel's failure to request a jury instruction constitutes deficient performance and prejudices the defendant, the appropriate remedy is to vacate the affected conviction and remand for a new trial. See *id*. at ___; slip op at 6-7. That is the remedy to which defendant has established entitlement with respect to the felony-firearm conviction predicated on second-degree murder.

Moreover, defendant is not entitled to relief on the felony-firearm conviction predicated on felon-in-possession because he has not established prejudice. Although the jury was instructed on self-defense with respect to both the murder and felon-in-possession charges, it rejected that

defense as to the latter, ultimately convicting defendant of felon-in-possession. That verdict necessarily reflects that the jury did not credit defendant's claim that his possession of the firearm was justified. Even if the jury could have believed that defendant fired the weapon in self-defense, it was not persuaded that his initial possession of the firearm was so justified. Under those circumstances, defendant has not shown a reasonable probability that, but for counsel's failure to request a self-defense instruction specific to felony-firearm, the jury would have acquitted him of the felony-firearm charge predicated on felon-in-possession. Accordingly, defendant is not entitled to relief on that conviction.[2]

## III. CONCLUSION

We vacate defendant's conviction and sentence for the felony-firearm count predicated on second-degree murder and remand for a new trial. We otherwise affirm defendant's convictions and sentences.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Matthew S. Ackerman

---

[2] Defendant also argues that the trial court erred by ordering the felony-firearm sentence associated with the murder charge to run consecutive to the felon-in-possession sentence, and that the jury reached impermissibly inconsistent verdicts by acquitting him of second-degree murder while convicting him of the attendant felony-firearm charge. Because we vacate that felony-firearm conviction and remand for a new trial on that count, these issues are moot. See *People v Richmond*, 486 Mich 29, 34-35; 782 NW2d 187 (2010) (cleaned up) ("It is universally understood that a moot cause is one which seeks to get . . . a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy."). Accordingly, we decline to address those arguments.