*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* N. J. MOORE, Minor.

UNPUBLISHED
May 15, 2026
1:10 PM

No. 372195
Wayne Circuit Court
Family Division
LC No. 2019-000805-NA

Before: FEENEY, P.J., and GARRETT and BAZZI, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to the minor child, NJM, under MCL 712A.19b(3)(b)(*ii*) (parent failed to prevent abuse or injury), (b)(*iii*) (abuse or injury caused by nonparent adult), (c)(*i*) (conditions that led to adjudication continue to exist) and (*ii*) (failure to rectify other conditions), and (j) (reasonable likelihood of harm if returned to parent). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The trial court originally took jurisdiction over NJM after a domestic violence incident occurred between respondent and NJM's mother in NJM's presence. The parental rights of NJM's mother were terminated in 2022.[1] Respondent was ordered to participate in individual counseling with an anger management component, maintain suitable housing and an income, and participate in weekly visits with NJM. On July 31, 2023, the trial court found that respondent had made enough progress on his treatment plan to return NJM to his care on August 2, 2023. On August 16, 2023, respondent called NJM's maternal grandmother asking her to pick up NJM because respondent needed a break. When NJM's grandmother changed NJM's clothes the next morning, she noticed wounds on NJM's inner arm and thighs. NJM's grandmother took him to the hospital,

---

[1] NJM's mother appealed the termination order in Docket No. 362220. This Court dismissed the appeal on the parties' stipulation. *In re N J Moore*, unpublished order of the Court of Appeals, entered November 22, 2022 (Docket No. 362220).

-1-

and the physician thought that the wounds were consistent with cigarette burns and looked to be five to seven days old. NJM was removed from respondent's care and the foster-care worker filed a supplemental petition for termination of respondent's parental rights. Respondent entered a no-contest plea to the allegations in the supplemental petition. At the best-interest hearing, the trial court found that termination was in NJM's best interests. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent argues that he was denied the effective assistance counsel when trial counsel advised him to enter a no-contest plea to the statutory grounds for termination and failed to present a defense during the best-interest hearing. We disagree.

To preserve a claim of ineffective assistance of counsel, the party asserting the error must raise the claim in a motion for a new trial or request for a *Ginther*[2] hearing. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 431; 884 NW2d 297 (2015).[3] Respondent did not raise this claim in a motion for a new trial or a request for a *Ginther* hearing. Consequently, our "review is limited to mistakes apparent from the record." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019).

A claim of ineffective assistance of counsel involves mixed questions of law and fact. *In re Casto*, 344 Mich App 590, 610; 2 NW3d 102 (2022). A trial court's findings of fact, if any, are reviewed for clear error. *Id.* But whether the facts constitute a violation of the respondent's right to the effective assistance of counsel is a question of law that this Court reviews de novo. *Id.*

"To be constitutionally effective, counsel's performance must meet an objective standard of reasonableness . . . ." *In re Casto*, 344 Mich App at 611 (quotation marks and citation omitted). In order to establish ineffective assistance of counsel, "the [respondent] must show that counsel's performance fell short of this objective standard of reasonableness and that there is a reasonable probability that, but for counsel's deficient performance, the outcome of [respondent's] trial would have been different." *Id.* at 611-612 (quotation marks and citation omitted; alterations in original). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018) (quotation marks and citation omitted). A respondent must meet a heavy burden to overcome the presumption that trial counsel employed an effective trial strategy. *In re Casto*, 344 Mich App at 612. Additionally, this Court will not "substitute its judgment for that of counsel's on matters of litigation strategy, and counsel's performance must be judged based on the knowledge, expertise, and information reasonably available when counsel formulated and implemented the litigation strategy." *Id.*

Respondent argues that counsel's performance fell below an objective standard of reasonableness when counsel advised respondent to enter a no-contest plea to the statutory grounds

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] "The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy in child protective proceedings . . . ." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016).

for termination. Respondent specifically argues that trial counsel was ineffective for advising him to stipulate that, at adjudication, he severely beat NJM's mother causing injuries requiring stitches because the trial court never made such a finding. Respondent correctly argues that the record did not support this factual basis for the plea. When the trial court took jurisdiction over NJM, the trial court found that there was one incident of domestic violence involving NJM's mother "where there was actually some harm." The trial court accepted that NJM's mother required stitches but questioned how NJM's mother had been injured and wondered if she had stumbled and fallen down after drinking excessively. Because this stipulation did not adequately reflect the trial court's findings, trial counsel's agreement to this stipulation in support of the plea was objectively unreasonable. Additionally, the trial court's original finding was part of the record, and agreeing to this stipulation did nothing to advance respondent's reason for entering a plea, namely, to avoid criminal or civil liability.

However, respondent has failed to establish a reasonable probability that but for this stipulation, the outcome of the hearing would have been different. The trial court was aware of its previous findings as it stated during the best-interest hearing that it had previously denied a request to terminate respondent's parental rights and offered respondent the opportunity to regain custody. Furthermore, the court found that termination was in NJM's best interests because NJM had not suffered any nonaccidental injuries until he was returned to respondent's care. The trial court also emphasized respondent's failure to visit NJM in nine months because of the inconvenience of his transportation issues. Accordingly, respondent failed to establish that he was denied effective assistance of counsel because of the stipulation regarding NJM's mother.

Respondent next argues that allowing respondent to make admissions regarding the nature of NJM's injuries was not a sound strategic decision considering respondent's denial that he caused the injuries. In this instance, the parties stipulated that the burns were not accidental. The parties also stipulated to the admission of medical records from Eastpointe Urgent Care detailing NJM's injuries and the physician assistant's conclusion that the injuries were not accidental, but consistent with cigarette burns. Respondent contends that this admission was inconsistent with trial counsel's argument during the best-interest hearing that respondent did not cause NJM's injuries, and therefore, was not sound trial strategy. However, this admission was not inconsistent with trial counsel's position at the best-interest hearing that respondent did not cause the injuries. The admission did not name respondent as the cause of the injuries, nor did the trial court find that respondent inflicted these injuries.

Respondent further asserts that this admission was in conflict with trial counsel's strategy at the best-interest hearing of arguing that the injuries were not burn marks. Trial counsel did argue at trial that the marks looked like injuries caused from a fall, rather than a burn. Yet, foster-care worker Nefititi Carter's testimony at the best-interest hearing was consistent with the admission that NJM's injuries were not accidental and were consistent with cigarette burns. Moreover, there was evidence of two separate visits to the urgent care or emergency department. Respondent testified that he took NJM to the hospital for suspected abuse in August 2023 and sent Carter a picture. However, Carter testified that she received a photo from respondent on July 9, 2023. In its findings, the trial court noted that there was no evidence to establish that respondent had taken NJM to the hospital with injuries in August 2023 and that respondent failed to explain this discrepancy. Respondent has failed to establish that trial counsel's advice for respondent to

stipulate to the description of the injuries fell below an objective standard of reasonableness and, but for this decision, the result would have been different.

Respondent also argues that his trial counsel was ineffective because she failed to call witnesses to testify on his behalf during the best-interest hearing. Respondent asserts that counsel should have called respondent's mother and sister to testify because they had supervised respondent's visits with NJM, and respondent was living with them at the time of the hearing. "The Court cannot substitute its judgment for that of counsel's on matters of litigation strategy, and counsel's performance must be judged based on the knowledge, expertise, and information reasonably available when counsel formulated and implemented the litigation strategy." *In re Casto*, 344 Mich App at 612. Additionally, "[c]ounsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 613 (quotation marks and citation omitted).

This Court is unable to determine from the existing record that respondent's mother or sister would have testified positively for respondent or that their testimony would have altered the outcome of the case. Respondent asserts that his mother and sister could have testified as to his relationship with NJM and his other children. However, the trial court made findings favorable to respondent concerning his relationship with NJM. The court observed that respondent loved his child and that the outcome may be different if that consideration was dispositive. The trial court also noted that respondent had complied well enough with his treatment plan, which eventually led to NJM's return to respondent's care. However, the trial court could not overlook that NJM had been injured soon after he was returned to respondent's care.

Respondent additionally contends that his mother could have testified as to NJM's injuries and her advice to respondent to take NJM to the hospital. Respondent similarly argues that trial counsel was ineffective because she and respondent consistently argued that NJM's injuries occurred when NJM was in the care of his maternal grandmother, contrary to respondent's plea and stipulation to the admission of the hospital report. However, the evidence established that there were two separate incidents of marks on NJM and two separate hospital visits. Respondent testified that he noticed "little marks" on NJM after NJM had been with his maternal grandmother. Respondent testified that the marks did not appear to be burns. Respondent also testified that he took NJM to the hospital and sent a picture of the hospital report to Carter. Carter testified that respondent sent her the picture of the report on July 9, 2023. NJM's maternal grandmother took NJM to the urgent care and the hospital on August 17, 2023, for what the medical staff determined were cigarette burns that had been inflicted within the last five to seven days. Because there is no other evidence that testimony from respondent's mother or sister would have changed the outcome of the case, respondent has failed to demonstrate that, but for counsel's failure to call those witnesses, the outcome of the proceedings would have been different.

Additionally, trial counsel thoroughly questioned respondent at the hearing. She elicited testimony from respondent that he was not currently drinking alcohol or taking any drugs, other than his prescribed medication, to contradict his therapist's assessment that respondent had substance abuse issues. Respondent explained that he reported his past history of drug and alcohol use to the therapist, but was currently sober. Considering this evidence, respondent has failed to establish that trial court's overall performance fell below an objective standard of reasonableness or that, but for counsel's performance, the outcome would have been different.

## III. REASONABLE EFFORTS

Respondent argues that the trial court erred by terminating his parental rights because petitioner failed to make reasonable efforts toward reunification by offering a treatment plan specifically designed to address the claims of physical abuse and substance abuse issues. Although we agree that the trial court erred when it ordered petitioner to cease reunification efforts, respondent has not established that the error affected his substantial rights.

Because child protective proceedings constitute a single continuous proceeding, a respondent has multiple opportunities to object to the adequacy of the services throughout the case. *In re Atchley*, 341 Mich App 332, 337-338; 990 NW2d 685 (2022). But "[i]n order to preserve an argument that petitioner failed to provide adequate services, the respondent must object or indicate that the services provided to them were somehow inadequate . . . ." *Id*. at 336 (quotation marks and citation omitted). Respondent did not object or indicate that the services petitioner offered were inadequate. Therefore, this issue is unpreserved. Because this argument is unpreserved, this Court reviews it for plain error affecting substantial rights. *In re Pederson*, 331 Mich App 445, 462-463; 951 NW2d 704 (2020). A respondent must establish that "(1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [respondent's] substantial rights." *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019).

Petitioner must make reasonable efforts toward reunification in all cases unless certain aggravating circumstances exist. *In re MJC*, 349 Mich App 42, 50; 27 NW3d 122 (2023). After the trial court took jurisdiction over NJM and denied the original petition to terminate respondent's parental rights, the trial court ordered petitioner to provide respondent with weekly visitation with NJM and individual therapy with an anger management component. Respondent participated in therapy and visited weekly with NJM. Upon respondent's compliance, the trial court allowed respondent to have unsupervised, overnight visits with NJM. After three of these visits occurred without incident, NJM was returned to respondent's care. Throughout this period, respondent did not object to the services or request more services.

Petitioner filed a supplemental petition on October 13, 2023, requesting termination of respondent's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (b)(*ii*), (c)(*i*), (c)(*ii*), (g), (j), and (k)(*iii*). Petitioner asked the trial court to remove NJM from respondent's care again and terminate respondent's parental rights because NJM suffered cigarette burns while in respondent's care. Petitioner asserted that respondent did not participate in the court-ordered individual therapy after NJM was returned to his care in August 2023. Petitioner also alleged that respondent's home was unsuitable because there were many unknown adults living in the home, including respondent's wife, who was on the Central Registry. Petitioner claimed that in August 2023, when Carter and another worker visited respondent's home, he was visibly intoxicated and slurring his words. Petitioner also alleged that respondent had been offered a court-ordered treatment plan and had participated in a psychological evaluation and individual therapy. Petitioner alleged that the supplemental petition contained allegations of severe physical abuse, which constituted an aggravated circumstance of nonaccidental burns. After the trial court accepted respondent's no-contest plea to the allegations in the supplemental petition, the trial court found that "based on the severity of now the second trauma to this child, the second time he's being removed; that the Department need not make any efforts toward reunification with the father."

-5-

MCL 722.638(1)(a) delineates the aggravated circumstances that excuse petitioner from making reasonable efforts toward reunification:

(1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

(a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

(*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other serious physical harm.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

(*vi*) Murder or attempted murder.

Petitioner alleged that NJM suffered injuries consistent with cigarette burns while in respondent's care and custody. Respondent stipulated to the admission of a medical report containing findings that NJM's injuries were consistent with nonaccidental injuries and cigarette burns. However, the medical report did not name respondent as having caused those injuries. Similarly, there was no other evidence establishing that respondent caused the injuries, nor did he admit to causing the injuries. Nor did petitioner submit any evidence that established that another adult residing in respondent's home inflicted the injuries. The evidence only established that NJM suffered physical harm while in respondent's care, and respondent failed to provide an adequate explanation for those injuries. Because there was no evidence establishing the requirements of MCL 722.638(1)(a), the trial court erred by allowing petitioner to cease making reasonable efforts toward reunification. *In re Barber/Espinoza*, ___ Mich ___, ___; ___ NW3d ___ (2025) (Docket No. 167745); slip op at 8-9.

Because respondent failed to preserve this issue, this Court must determine whether the trial court's error affected respondent's substantial rights. *In re Ferranti*, 504 Mich at 29. "While the [petitioner] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Atchley*, 341 Mich App at 339, quoting *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). Consequently, a respondent is required to participate in and benefit from the services offered. *In re Atchley*, 341 Mich App at 339.

Respondent quit participating in counseling and visitation with NJM long before the trial court ordered petitioner to discontinue services. Respondent ceased participation in counseling in

August 2, 2023, after NJM was returned to his care. He attended a few more counseling sessions after NJM was placed in a safety plan, but did not attend any sessions after September 14, 2023. The trial court did not order petitioner to discontinue services until February 27, 2024. Moreover, respondent's continued outbursts at the best-interest hearing demonstrated respondent's failure to benefit from counseling. Considering that respondent quit participating in services and visitation in 2023, respondent has failed to show that the trial court's February 27, 2024 order affected his substantial rights. See *In re Sanborn*, 337 Mich App 252, 267-268; 976 NW2d 44 (2021).

## IV.  NO-CONTEST PLEA

Respondent argues that the trial court erred by accepting his no-contest plea because it failed to establish the facts necessary to support the proposed statutory grounds for termination of his parental rights and it was not knowingly, understandingly, or voluntarily made. We disagree.

In order to preserve any claim that a plea had an inadequate factual basis or that the plea was not understanding, voluntary, or accurate, a respondent must raise the issue in a motion to withdraw his plea. *In re Pederson*, 331 Mich App 445, 462; 951 NW2d 704 (2020); *In re Tiemann*, 297 Mich App 250, 265 n 31; 823 NW2d 440 (2012); *People v Kaczorowski*, 190 Mich App 165, 172; 475 NW2d 861 (1991). Respondent failed to preserve this issue.

Unpreserved issues in child protection proceedings are reviewed for plain error affecting substantial rights. *In re Ferranti*, 504 Mich at 29. To be entitled to appellate relief, respondent "must establish that (1) error occurred; (2) the error was 'plain,' i.e., clear or obvious; and (3) the plain error affected [his] substantial rights." *Id*. If a respondent "satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse." *In re Pederson*, 331 Mich App at 463 (quotation marks and citation omitted). The error must have "seriously affected the fairness, integrity or public reputation of judicial proceedings . . . ." *Id*. (quotation marks and citation omitted).

Respondent argues that the trial court erred by accepting his no-contest plea because it was not knowingly made, and that trial counsel was ineffective for advising him to enter the plea. MCR 3.971 provides the process for respondent entering a plea to the original allegations in the petition. Although MCR 3.971(B) does not apply when a trial court accepts a plea of admission or no contest to statutory grounds for termination on a supplemental petition, it provides a guideline for trial courts. *In re Pawloski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 372145); slip op at 5.

MCR 3.971 provides, in pertinent part:

> (B) Advice of Rights and Possible Disposition. Before accepting a plea of admission or plea of no contest, the court must advise the respondent on the record or in a writing that is made a part of the file:

> (1) of the allegations in the petition;

> (2) of the right to an attorney, if respondent is without an attorney;

(3) that, if the court accepts the plea, the respondent will give up the rights to

(a) trial by a judge or trial by a jury,

(b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,

(c) have witnesses against the respondent appear and testify under oath at the trial,

(d) cross-examine witnesses, and

(e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;

* * *

(D) Voluntary, Accurate Plea.

(1) Voluntary Plea. The court shall not accept a plea of admission or of no contest without satisfying itself that the plea is knowingly, understandingly, and voluntarily made.

(2) Accurate Plea. The court shall not accept a plea of admission or of no contest without establishing support for a finding that one or more of the statutory grounds alleged in the petition are true, preferably by questioning the respondent unless the offer is to plead no contest. If the plea is no contest, the court shall not question the respondent, but, by some other means, shall obtain support for a finding that one or more of the statutory grounds alleged in the petition are true. The court shall state why a plea of no contest is appropriate.

At a dispositional review hearing on February 27, 2024, respondent was sworn in before the trial court to enter a no-contest plea. The trial court asked respondent if he understood that if the trial court accepted his plea, respondent would not have the right to a trial regarding the statutory grounds for termination. Respondent confirmed that he understood. Respondent testified that he understood that he was not waiving his right to contest whether termination was in NJM's best interests. Respondent indicated his understanding that he was giving up the right to have petitioner prove the allegations underlying the statutory grounds for termination by clear and convincing evidence. When the trial court asked if respondent understood that he was giving up the right to have the trial court order witnesses to testify and to question any witnesses who testified under oath, respondent agreed that he understood. Respondent testified that he understood his plea would be part of petitioner's case in its request to terminate his parental rights. Respondent denied that anyone promised him anything or threatened him in order to entice him to enter a plea. Respondent also agreed that he understood that he would not admit to anything on the record, but that the trial court would consider the information that petitioner and his attorney agreed to admit to the trial court.

From a review of this exchange, it is clear that the trial court had no reason to believe that respondent did not understand that his agreement to the admission of the stipulated evidence and accompanying narrative would establish the statutory grounds for termination of his parental rights. Respondent now argues that he did not understand the ramifications of the plea, as evidenced by his continued dispute of the facts to which he stipulated. However, respondent did not waive his right to contest whether termination was in NJM's best interests, but rather, gave up the right to have petitioner present clear and convincing evidence of the statutory grounds for termination. Respondent was afforded a best-interest hearing in which he testified and argued that termination was not in NJM's best interests.

Respondent also argues that his confusion throughout the proceedings should have signaled to the trial court that it should have probed deeper into respondent's understanding and offered a more thorough explanation. Contrary to respondent's argument of his confusion, the record establishes that respondent frequently expressed impatience and frustration, rather than confusion. As one example of one of respondent's many outbursts, the trial court was forced to take a break at the best-interest hearing because another person was present in the room with respondent when he was testifying via Zoom. Respondent told the trial court that he was with his mother. Respondent informed the trial court that "[m]y momma could say what she would want to say . . . ." Respondent also expressed frustration over the continued questioning. Respondent stated:

> How long we gonna be over here? 'Cause she askin' the same questions she asked me, like, man. That's why they don't want me in the courtroom; they know how I get down. Talkin' about I'm threatenin' the lady. That's three years ago. I ain't thinkin' about that b***h no more. F** that ol' b***h.

Respondent's behavior appeared to be driven more by his irritation and frustration with the proceedings, than confusion over his admissions on the statutory grounds for termination. The trial court very patiently accommodated respondent and his outbursts and continued to make findings favorable to respondent.

The record reveals that respondent stipulated to the admission of evidence and a narrative of events knowingly and voluntarily. Respondent took advantage of this procedure because he was on probation for one offense and had a pending case on another offense. Respondent's continued dispute of the stipulated facts exhibited his frustration and disregard of the process, but did not undermine the trial court's finding that respondent entered a valid plea. Moreover, because respondent failed to preserve this error, this Court must consider whether a plain error affected respondent's parental rights. Respondent failed to establish a plain error or that a plain error affected his substantial rights. Because respondent has failed to establish that his plea was unknowingly made, he has also failed to demonstrate that, but for trial counsel's advice to enter the plea, the outcome would have been different.

Respondent pleaded no contest and the trial court accepted the plea and terminated respondent's parental rights under MCL 712A.19b(3)(b)(*ii*), (b)(*iii*), (c)(*i*), (c)(*ii*), and (j), which permit termination of parental rights under the following circumstances:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

* * *

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

(*iii*) A nonparent adult's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse by the nonparent adult in the foreseeable future if placed in the parent's home.

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

(*ii*) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The parties stipulated to the following exhibits being submitted in relation to respondent's plea: DHS 154 Investigative Report; photos of injuries to NJM's left arm, right kneecap, and left inner thigh; medical records from Eastpoint Urgent Care; a July 13, 2023 letter from respondent's therapist; and an August 24, 2023 Detroit Police Department police report. The parties also agreed to the factual basis for the no-contest plea and it was read into the record. On the basis of the foregoing, the trial court accepted respondent's plea and found that the grounds for termination had been established.

There was no evidence to form the factual basis for termination of his parental rights pursuant to MCL 712A.19b(3)(b)(*iii*) or (c)(*ii*). Although Carter, at the best-interest hearing, testified that respondent's wife, who had a history with CPS, lived with respondent and cared for NJM, there was no evidence that respondent's wife caused NJM's injuries. Therefore,

-10-

respondent's plea did not contain a factual basis to support that NJM's injuries were caused by a nonparent adult's act. MCL 712A.19b(3)(b)(*iii*). In addition, respondent's plea did not support termination pursuant to MCL 712A.19b(3)(c)(*ii*). There was no evidence that after the discovery of NJM's injuries, respondent received recommendations to rectify the conditions and failed to do so after being given a reasonable opportunity to rectify the conditions. Rather, petitioner requested termination in the supplemental petition and did not offer respondent recommendations to rectify the situation or give respondent time to do so. Accordingly, respondent's plea did not provide a factual basis for termination pursuant to MCL 712A.19b(3)(b)(*iii*) or (c)(*ii*).

However, respondent's plea provided a factual basis for termination pursuant to MCL 712A.19b(3)(b)(*ii*), (c)(*i*) and (j). The amended petition for termination of parental rights contained allegations that respondent engaged in a domestic violence incident with NJM's mother. Respondent is correct that this condition no longer continued to exist at the time the trial court took respondent's plea. However, the petition also contained allegations of respondent's violent and threatening behavior. Petitioner alleged that respondent left a voicemail for NJM's grandmother threatening to hurt her. Respondent threatened a foster-care worker, Zachary Browne, during a phone call. Respondent told Browne that " 'somebody is going to get hurt.' " During a Zoom hearing, the trial court and the attorneys moved into a breakout room. However, the recording in the courtroom continued, and respondent remained on Zoom. Respondent continued speaking and made more threats to NJM's maternal grandmother and the foster-care worker. Respondent made a general threat that he would " 'kill for [his] kids' " and " 'kill anyone.' " Respondent stated that the house of NJM's maternal grandmother would " 'be on fire tonight . . . .' " Respondent also threatened to torture and choke NJM's maternal grandmother. Petitioner alleged that a police report was filed with the Eastpointe Police Department on the basis of respondent's threats.

As a result of respondent's threats, the trial court ordered respondent to submit to a psychological evaluation and participate in individual therapy with an anger management component. The stipulated evidence for the no-contest plea provided that respondent attended two therapy sessions after NJM was returned to his care, but had not attended a session since September 14, 2023. In August 2023, respondent was arrested for felony assault and weapons charges after he pulled a firearm on an individual who attempted to interrupt respondent's physical assault of another individual. Respondent was convicted of carrying a concealed weapon on February 16, 2024, and sentenced to two years' probation. This evidence was sufficient to support a factual basis that 182 days had elapsed since the initial dispositional order and the condition that led to adjudication, respondent's inability to manage his anger, continued to exist and there was no reasonable likelihood that the condition would be rectified within a reasonable time considering the child's age. See MCL 712A.19b(3)(c)(*i*).

With regard to MCL 712A.19b(3)(b)(*ii*) and (j), there was evidence that NJM sustained injuries consistent with nonaccidental cigarette burns soon after being returned to respondent's care and custody. Although the trial court did not believe that respondent inflicted the injuries, respondent was unable to provide an alternative explanation for NJM's injuries and continued to argue that the injuries were the same injuries respondent discovered in July 2023. However, there was evidence that the injuries were not the same and occurred after NJM was returned to respondent's care and custody. There was also substantial evidence on the record of respondent's angry outbursts, which included several threats of harm to NJM's caretaker and the workers. From this evidence, the trial court properly concluded that there was clear and convincing evidence that

respondent had the ability to protect NJM and failed to do so and that there was a reasonable likelihood, based on respondent's conduct, that the child would be harmed if he was returned to respondent's care. See MCL 712A.19b(3)(b)(*ii*) and (j).

Because "[o]nly one statutory ground for termination need be established," *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012), the failure to establish the factual basis for termination pursuant to MCL 712A.19b(3)(b)(*iii*) and (c)(*ii*) did not invalidate respondent's plea, as there was clear and convincing evidence to support termination of respondent's parental rights pursuant to MCL 712A.19(3)(b)(*ii*), (c)(*i*), and (j). Additionally, while trial counsel's performance in allowing respondent to enter a plea to the statutory grounds for termination pursuant to MCL 712A.19b(3)(b)(*iii*) and (c)(*ii*) may have fallen below an objective standard of reasonableness, that performance did not change the outcome. The trial court properly found that several other grounds for termination were supported by clear and convincing evidence and that termination was clearly in NJM's best interests.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Kristina Robinson Garrett
/s/ Mariam S. Bazzi