*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. T. SHIFLETT, Minor.

UNPUBLISHED
June 08, 2026
9:25 AM

No. 375741
Lapeer Circuit Court
Family Division
LC No. 24-013274-NA

Before: TREBILCOCK, P.J., and CAMERON and LIEVENSE, JJ.

PER CURIAM.

Respondent-father appeals from an order terminating his rights to his minor child. We affirm.

## I. BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), commenced this child-protective proceeding alleging respondent sexually abused AS, his minor child.[1] The trial court authorized the petition, ordered respondent to leave his family's home, suspended his parenting time, and entered a no-contact order.

During the adjudicative trial, a Children's Protective Services investigator and a Michigan State Police trooper testified about their investigations, which included observing AS's forensic interview disclosing sexual abuse involving penetration. AS too testified about specific incidents of sexual abuse by her father at her grandparents' home. But she also deflected those prior statements by generally denying the abuse occurred, stating she came to this realization after reading her Bible, engaging in therapy, and discussing it with nonrespondent-mother (who was upset respondent was ordered to leave the home and had not filed for divorce). The jury found AS

---

[1] The petition also contained allegations concerning respondent's oldest daughter, RS, who turned 18 years old during the proceedings, and was subsequently dismissed.

was "subject to a substantial risk of harm to her mental well-being," and the trial court exercised jurisdiction under MCL 712A.2(b)(1).

At the subsequent termination hearing, the trial court found "on the basis of clear and convincing legally admissible evidence introduced at the trial" that statutory grounds existed to terminate respondent's parental rights to AS because he "sexually abused [AS] numerous times." The trial court also concluded AS "face[d] the possibility of future harm should [respondent] be allowed back in the home." During the best-interest phase of the proceedings, several witnesses (including AS and respondent) testified about their strong bond. Specifically, AS wanted respondent to return home. The trial court nonetheless found termination was in AS's best interests and terminated respondent's parental rights under MCL 712A.19b(3)(b)(*i*) (sexual abuse by parent and reasonable likelihood of injury or abuse if the child is returned to the parent), (j) (reasonable likelihood of harm if the child is returned to the parent), and (k)(*ii*) (criminal sexual conduct involving penetration by parent and reasonable likelihood of harm if the child is returned to the parent).

This appeal by right followed. During appellate proceedings, respondent moved this Court to remand to the trial court for a *Ginther*[2] hearing. Respondent argued his trial counsel was ineffective for failing to: (1) object to the trial court's failure to instruct the jury that AS's statements concerning sexual assault were not substantive evidence and could only be considered for impeachment or credibility; (2) introduce evidence concerning AS's statements in therapy; and (3) move for a directed verdict. He did not, however, submit an affidavit or offer of proof concerning the facts to be established on remand as required by MCR 7.211(C)(1)(a). This Court denied the motion "without prejudice to a case call panel of this Court determining that remand is necessary once the case is submitted on a session calendar." Respondent's appellant brief does not renew this *Ginther* hearing request.

## II. ADJUDICATION TRIAL

Respondent first argues the trial court erred by failing to instruct the jury under M Civ JI 3.15 that it could not consider AS's testimony about the sexual assaults as substantive evidence of respondent's parental unfitness. Respondent waived this argument.

A party "may waive his or her challenge to jury instructions. Waiver extinguishes any error, leaving nothing for this Court to review." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019) (citations omitted). A party "waives an issue by expressly approving of the trial court's action." *Id*. "When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions." *Id*. Here, respondent expressly affirmed (through counsel) that he had no objections to the trial court's jury instructions. He has thus waived any issue with the propriety of those instructions.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## A. STATUTORY GROUNDS FOR JURISDICTION

Respondent next challenges the evidence supporting the existence of a statutory ground for jurisdiction.

DHHS "has the burden of proving by a preponderance of the evidence one or more of the statutory grounds for jurisdiction alleged in the petition." *In re Sanders*, 495 Mich 394, 405; 852 NW2d 524 (2014) (citation omitted). When determining whether the trial court has jurisdiction in a case, the finder of fact "must examine the child's situation at the time the petition was filed." *In re Long*, 326 Mich App 455, 459; 927 NW2d 724 (2018) (quotation marks and citation omitted). The finder of fact need not find more than one statutory ground for jurisdiction. See *In re SLH*, 277 Mich App 662, 669; 747 NW2d 547 (2008).

Viewing the evidence in the light most favorable to DHHS and "deferring to the jury in determining what evidence is to be believed and the weight to be attached to the evidence," *In re Sluiter*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368266), slip op at 12, the evidence presented at the adjudication trial established AS was "subject to a substantial risk of harm to . . . her mental well-being" at the time the petition was filed, MCL 712A.2(b)(1). AS testified respondent sexually abused her in her grandparents' home, including by oral penetration and sexual contact with respondent's penis, AS's breasts, and AS's vagina. That abuse occurred before the time of the adjudication trial, but the trauma respondent inflicted upon AS affected her mental well-being: AS required therapy to address her anxiety and depression, and she reported to medical professionals that she did not feel safe in her home because of respondent's sexual abuse. Finally, without DHHS's involvement, nonrespondent-mother would have permitted respondent and AS to remain in the same home indefinitely, which a jury could find presented a substantial risk of harm to AS's mental well-being. Cf. *In re Leach*, 347 Mich App 26, 32-35; 14 NW3d 178 (2023).

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent contends his trial counsel was ineffective in several ways during the adjudication trial. We consider the arguments in turn.

### 1. OVERVIEW

"Both the Michigan and federal Constitutions guarantee the right to the assistance of counsel in criminal cases. Given the nature of accusations and consequences in child-protective proceedings, this right has been extended to these civil proceedings." *In re Casto*, 344 Mich App 590, 611; 2 NW3d 102 (2022) (citations omitted). A parent has a right to a lawyer in child-protective proceedings, including the right to appointed counsel. *In re Williams*, 286 Mich App 253, 275-276, 779 NW2d 286 (2009); MCR 3.915(B)(1). The right to counsel guarantees effective assistance of counsel. See *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009). "To obtain relief for the denial of the effective assistance of counsel, the respondent must show that counsel's performance fell short of the objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the respondent's trial would have been different." *Casto*, 344 Mich App at 611-612 (cleaned up).

Claims of ineffective assistance of counsel are mixed questions of fact and law. *Id*. at 610. This Court "review[s] for clear error a trial court's factual findings, and questions of constitutional law are reviewed de novo." *Id*. Because respondent "did not move in the trial court for a new trial or an evidentiary hearing," and this Court denied his motion for remand, this Court's review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). However, we may consider evidence not in the record for the limited purpose of considering whether remand for a *Ginther* hearing is appropriate. See, e.g., *People v Moore*, 493 Mich 933, 933 (2013).

## 2. AS'S TESTIMONY

We first consider respondent's concerns regarding how his trial counsel approached the admission of several aspects of AS's testimony, which he contends consisted of inadmissible hearsay.

The rules of evidence apply at adjudication trials. *In re Collier*, 314 Mich App 558, 568, 573; 887 NW2d 431 (2016). Hearsay is a "statement," other than one made by the declarant while testifying "at the current trial or hearing," offered "to prove the truth of the matter asserted in the statement." MRE 801(c). " 'Statement' means a person's oral assertion, written assertion, or nonverbal conduct if the person intended it as an assertion." MRE 801(a). " 'Declarant' means the person who made the statement." MRE 801(b). "Hearsay is inadmissible unless the rules of evidence provide otherwise." *In re Utrera*, 281 Mich App 1, 18; 761 NW2d 253 (2008).

On thorough review of AS's testimony, petitioner did not elicit hearsay from AS during her testimony at the adjudication trial. Rather, after AS at one point denied respondent sexually abused her, counsel for DHHS redirected AS to other topics, later returned to the abuse allegations, and AS then testified about her memories of sexual assault perpetrated on her by respondent. During that testimony respondent's counsel made several appropriate objections and then had an opportunity to cross-examine AS. Although AS agreed on cross-examination that during her earlier testimony she had repeated statements she made at the forensic interview, the record does not indicate what parts of her testimony that applied to, and the record reflects that AS testified about memories she had concerning respondent. AS's testimony was not hearsay because it did not amount to AS merely repeating her previous out-of-court statements, and the testimony could be considered as substantive evidence of respondent's parental unfitness.

And with this conclusion, respondent's additional ineffective-assistance claims relating to her testimony are without merit. Under these facts, the prior inconsistent statement instruction set forth in M Civ JI 3.15 was inapplicable, thus any request for it would have been futile. See *In re Piland*, 336 Mich App 713, 727-730; 972 NW2d 269 (2021). So too for objecting to DHHS referring to AS's testimony as substantive evidence of respondent's parental unfitness during closing arguments. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## 3. FAILURE TO UTILIZE AS'S THERAPY RECORDS

Respondent also argues trial counsel was ineffective for failing to use evidence contained in AS's therapy records to strengthen his case. "[D]ecisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, which we

will not second-guess with the benefit of hindsight." See *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (quotation marks and citations omitted). And because that is what respondent asks us to do, this claim of error is not meritorious.

Counsel obtained the therapy records, knew their contents, and considered using them at trial by calling AS's therapist as a witness and using the records to impeach AS's testimony, if necessary. Based on AS's testimony, however, those records contained more contemporaneous statements about respondent's sexual assaults on AS that would have been detrimental to respondent's defense to attack AS's credibility. Instead, respondent's trial counsel made closing arguments supported by the evidence at trial: "We want you to believe [AS] when she said I'm 99 percent sure this never happened." Respondent's trial counsel also argued respondent lacked the "opportunity" to sexually assault AS at the home, and law enforcement and DHHS failed to properly investigate the matter. That this strategy did not work does not mean it rises to the level of ineffective assistance of counsel. See *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008).

### 4. FAILURE TO MOVE FOR A DIRECTED VERDICT

We also find unpersuasive respondent's claim that his trial counsel was ineffective for failing to move for a directed verdict. Given the conflicting evidence of whether AS was sexually assaulted, the jury was required to make that determination, and it would have been error for the trial court to grant a directed verdict in favor of respondent. See *Barnes v 21st Century Premier Ins Co*, 334 Mich App 531, 550; 965 NW2d 121 (2020). Because "[f]ailing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel," *Ericksen*, 288 Mich App at 201, respondent's counsel did not perform deficiently.

\* \* \*

In sum, respondent has failed to establish counsel's performance was objectively unreasonable and is not entitled to relief. There is also no reason for this Court to reconsider its previous denial of respondent's motion to remand for a *Ginther* hearing.

### III. STATUTORY GROUNDS FOR TERMINATION

Respondent next argues the trial court clearly erred by finding a statutory ground for termination of respondent's parental rights. We disagree.

"To terminate parental rights, the trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Pederson*, 331 Mich App 445, 472; 951 NW2d 704 (2020). We focus here on MCL 712A.19b(3)(j), which permits termination when "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent."[3] Termination is proper under MCL 712A.19b(3)(j) where the parent

---

[3] Because termination was proper under subdivision (j), we need not consider whether termination was proper under (b)(*i*) or (k)(*ii*). See *In re HRC*, 286 Mich App at 461.

exhibits behavior that would put a child at a risk of harm. *In re White*, 303 Mich App 701, 712-713; 846 NW2d 61 (2014). The harm contemplated under subdivision (j) includes emotional harm, as well as physical harm. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). We review "for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App 332, 343; 990 NW2d 685 (2022).

The trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(j). It reasonably found by clear and convincing evidence that respondent subjected AS to sexual abuse and did not accept responsibility throughout the proceedings. Although he argues that he was a "model parent" in the years leading up to termination, the trauma of being sexually abused continued to significantly impact AS's mental well-being. AS required therapy to address her anxiety and depression, and she reported not feeling safe in the home. This actualized risk of emotional harm demonstrates the trial court did not clearly error here. See *Hudson*, 294 Mich App at 267-268.

## IV. BEST INTERESTS

That leaves us with respondent's contention that the trial court failed to acknowledge AS's relative placement and improperly found termination was in AS's best interests.

"The trial court must order the parent's rights terminated if [DHHS] has established a statutory ground for termination by clear and convincing evidence and it finds from a preponderance of the evidence on the whole record that termination is in the children's best interests." *White*, 303 Mich App at 713. "The trial court should weigh all the evidence available to determine the children's best interests." *Id*. The trial court focuses on the child—not the parent—when reviewing best interests. *Atchley*, 341 Mich App at 346. When determining best interests, "the court should consider a wide variety of factors that may include the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *White*, 303 Mich App at 713 (quotation marks and citation omitted). Our review is for clear error. *Id*.

As found by the trial court, evidence supports AS was bonded with respondent. But however strong that bond may have been, it is only one factor for the trial court to consider. See *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). And it "is a blade that is capable of cutting both ways; whether it benefits or harms a child depends on how the parent wields it." *Pederson*, 331 Mich App at 477. As already discussed, respondent sexually abused AS on multiple occasions, which made his ability to parent—to use the trial court's words— "highly suspect." A caseworker testified DHHS could refer respondent to parenting classes and for a psychological evaluation. However, there were no specific services available to rehabilitate respondent, who sexually penetrated his child, did not accept responsibility, and repeatedly denied the allegations.

To respondent's eyes, he was a "model parent" in the years leading up to termination. But the trial court rightly discounted that assertion given AS's continued emotional suffering and respondent being unrepentant (and even garnering support from family members and third parties that led them to believe the allegations against respondent were false even after the jury's verdict and the trial court's decision to exercise jurisdiction).

Finally, the trial court adequately considered AS's placement with her mother (i.e., a relative), *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 10, a factor weighing against termination that a trial court must consider when making its best-interest determination, *Atchley*, 341 Mich App at 347. After acknowledging AS's relative placement, the trial court concluded AS required permanency and stability, finding AS could not achieve this if respondent retained his parental rights. While respondent complains the trial court did not expressly state it understood AS's placement with nonrespondent-mother weighed against termination, the trial court was not required to state certain magic words for its best-interest holding to withstand appellate review. "Brief, definite, and pertinent findings and conclusions on contested matters are sufficient." MCR 3.977(I)(1). The trial court met these requirements and clearly understood relative placement weighed against termination. In sum, the trial court did not clearly err in finding by a preponderance of the evidence establishes termination of respondent's parental rights was in AS's best interests.

## V. CONCLUSION

For these reasons, we affirm the trial court's judgment.

/s/ Christopher M. Trebilcock
/s/ Thomas C. Cameron
/s/ Andrew J. Lievense